Filed 2/10/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF LOS ANGELES, et al., | B250805 |
| Petitioners, | (Los Angeles County Super. Ct. No. BS138842) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| TRAVIS WADE, | |
| Real Party in Interest. | |

PURPORTED APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Treated as petition for writ of mandate. Petition granted.

Law Offices of Ada R. Cordero-Sacks, Ada Rita Cordero-Sacks and David Ruiz Riera, for Plaintiff and Respondent.

Michael N. Feuer, City Attorney, Gregory P. Orland and Brian I. Cheng, Deputy City Attorneys for Defendants and Appellants.

─────────────

Defendants and appellants City of Los Angeles (City), Los Angeles Housing Department (LAHD) and Mercedes Marquez, acting general manager of the LAHD (sometimes collectively referred to as the City) purport to appeal a judgment granting a petition for traditional writ of mandate (Code Civ. Proc., § 1085) in favor of plaintiff and respondent Travis Wade (Wade).[1]

Wade, an apartment tenant who lived alone, was evicted by his landlord after the City determined his unit, a converted recreation room, was an illegal rental. The issue presented is the amount of relocation assistance to which Wade was entitled. Wade asserted he has an orthopedic disability impairing personal mobility. Pursuant to Los Angeles Municipal Code (LAMC) section 151.09.G, within the Rent Stabilization Ordinance, a tenant such as Wade who has lived in a rental unit for three or more years is entitled to relocation assistance from the landlord in the sum of $9,650, unless the tenant is a "qualified tenant," [2] in which case the tenant is entitled to an enhanced payment of $18,300. A "qualified tenant" includes a tenant who "is handicapped as defined in Section 50072 of the California Health and Safe[ty] Code . . . ." (LAMC § 151.02.)[3]

---

[1]    As discussed *infra*, the purported appeal is not from a final judgment. However, rather than dismiss the appeal, we deem it a petition for writ of mandate and resolve the matter on the merits.

[2]    LAMC section 151.02 provides in relevant part: "*Qualified Tenant.* Any tenant who satisfies any of the following criteria on the date of service of the written notice of termination described in California Civil Code Section 1946: has attained age 62; is *handicapped as defined in Section 50072 of the California Health and Safe[ty] Code*[;] is disabled as defined in Title 42 United States Code § 423; or is a person residing with and on whom is legally dependent (as determined for federal income tax purposes) one or more minor children." (Italics added.)

[3]    Health and Safety Code section 50072 (hereafter section 50072) states: "*Handicapped" means a family in which the head of the household is suffering from an orthopedic disability impairing personal mobility or a physical disability affecting his or her ability to obtain employment or a single person with such a physical disability, where the family or person requires special care or facilities in the home.* 'Handicapped' also includes a family in which the head of household suffers from a developmental disability specified in subdivision (a) of Section 38010 or a mental disorder which would render him or her eligible to participate in programs of rehabilitation or social services

2

The trial court held a single person with an orthopedic disability is handicapped within the meaning of section 50072, so as to be entitled to the enhanced relocation payment under LAMC section 151.09.G. We conclude the ruling was erroneous. Under the plain language of section 50072, only a head of household with an orthopedic disability is deemed to be handicapped. Because Wade was a single person, not a head of household, he was not a "qualified tenant" for purposes of the enhanced relocation payment. (LAMC § 151.02.)

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 1, 2009, Wade rented a converted recreation room from the Sterns (hereafter, landlord) (not a party to this appeal). On February 16, 2012, the City issued a Substandard Order, citing the landlord for unapproved use of a recreation room as a dwelling for hire. The landlord filed a declaration of intent to evict in order to comply with the City's order. The City referred the matter to Paragon Partners, Inc. (Paragon), the City's relocation services contractor. Paragon made a determination that Wade was disabled and entitled to $18,300 in relocation assistance, based on his status as a "qualified tenant" within the meaning of LAMC section 151.02.

1. *Administrative proceedings*.

The landlord appealed Paragon's determination that Wade was a "qualified tenant" to the LAHD. Following an administrative hearing, the hearing officer issued a written decision which concluded Wade was not a "qualified tenant" and therefore was entitled to relocation assistance in the amount of $9,650 as an eligible tenant who had resided in the subject dwelling unit for three or more years. The hearing officer found the evidence showed Wade was the sole occupant of the unit, that he was regularly employed as an actor, and he did not require special care or facilities in the home. Wade contended he was a "qualified tenant" because he had "an orthopedic disability impairing personal

conducted by or on behalf of a public agency, or a single person with such a developmental disability or mental disorder. 'Handicapped' also includes an elderly or handicapped household, as defined in Section 19903 and subject to Part 4.5 (commencing with Section 19902) of Division 13." (Italics added.)

3

mobility." [4]  The hearing officer rejected that argument, finding that in the plain language of section 50072, "the definition of 'handicapped' based on an orthopedic disability impairing personal mobility applies only to a family's head of household."

2. *Trial court proceedings*.

Wade filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), contending the hearing officer abused her discretion in interpreting the relevant statute and ordinance.  He also sought traditional mandamus (Code Civ. Proc., § 1085), directing the City prospectively to "correct its flawed interpretation of a 'qualified tenant' as defined in the LAMC in accordance with . . . section 50072."[5]

Wade argued that section 50072 does not establish a minimum number of individuals to define a family or head of household, and the statute does not require two occupants in a household for an occupant to have the status of a "head of household." Wade reasoned "a household can consist of just one person," and when "interpreting section 50072 it is clear that a singular person can be the head of their household-of-one."

In opposition, the City contended Wade was not handicapped within the meaning of section 50072 because he was not living in the subject dwelling unit as "a family in which the head of the household is suffering from an orthopedic disability impairing personal mobility . . . ." (*Ibid*.)

On June 18, 2013, the matter came on for hearing.  After considering the parties' briefs, oral argument and the administrative record, the trial court concluded:  "a.  Health and Safety Code section 50072 does not discriminate or differentiate between the head of household of households-of-one or multi-person households;  [¶]  b.  a 'family' can

---

[4]  The evidence also showed:  Wade was honorably discharged from the United States Marine Corps in 1997 based on a disability-related determination; currently he did not have any restrictions on physical activity; he continued to experience pain associated with a condition for which he was given a permanent 10 percent disability rating.

[5]  Wade further contended he was a "qualified tenant" within the meaning of LAMC section 151.02 for the additional reason that he is disabled in accordance with 42 United States Code section 423.  However, he has abandoned that argument.

4

consist of a household of one person, or in other words, a head of household of one person; [¶] c. a 'head of household' is an individual in the family who financially supports the household."

On July 22, 2013, the trial court entered a judgment directing the issuance of a peremptory writ of mandate ordering the City to vacate the hearing officer's decision and to conduct a new hearing to determine whether Wade is a "qualified tenant," and further, to interpret LAMC section 151.02 and section 50072 in accordance with the court's interpretation, as set forth above.

On August 13, 2013, the City filed a notice of appeal from the judgment.

**CONTENTIONS**

The City contends section 50072 is unambiguous and clearly distinguishes between a "family" and a "single person" in defining the term "handicapped."

**DISCUSSION**

1. *Procedural issues.*

    a. *Appealability.*

The July 22, 2013 judgment, which is the subject of this appeal, was not a final judgment. The judgment provided, inter alia, that Wade's "application for a writ of administrative mandamus is held in abeyance" while the City conducted an additional administrative hearing to determine whether Wade was a qualified tenant. Thus, regardless of its formal appearance and designation, the judgment was merely interlocutory and therefore nonappealable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 136, p. 209.)

However, rather than dismiss the appeal, we treat the purported appeal as a petition for writ of mandate because it presents a question of public importance, the parties have fully briefed the propriety of the trial court's ruling, and both parties desire a resolution of the merits of the appeal. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1254; see, e.g., *Board of Dental Examiners v. Superior Court* (1998) 66 Cal.App.4th 1424, 1430-1431 [remand order was

5

not appealable but appellate court exercised its discretion to treat appeal as petition for writ of mandate]; see generally, 9 Witkin, *supra,* § 128, pp. 198-200.)

b. *Mootness.*

The appellate briefs advised this court the landlord has settled with Wade. Nonetheless, the matter is not moot because the July 22, 2013 judgment directed the City, prospectively, to interpret LAMC section 151.02 as not differentiating "between the head of household of households-of-one or multi-person households."

We now address the merits of the controversy.

2. *A single person with an orthopedic disability is not "handicapped" within the meaning of section 50072 and therefore is not a "qualified tenant" within the meaning of LAMC section 151.02.*

a. *Principles of statutory construction.*

In matters of statutory construction, " '[w]e apply well-established principles of statutory construction in seeking "to determine the Legislature's intent in enacting the statute ' "so that we may adopt the construction that best effectuates the purpose of the law." ' " [Citations.] We begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. [Citation.]' [Citation.] But if the statutory language may reasonably be given more than one interpretation, courts may employ various extrinsic aids, including a consideration of the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.]" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)

The interpretation of a statute, or an ordinance, presents a question of law which we review de novo. (*Conservatorship of Whitley, supra*, 50 Cal.4th at p. 1214; *People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 113 ["[i]nterpretation of the municipal rent control ordinance presents a question of law for our independent review"].)

6

b. *Canons of construction compel the conclusion that a single person cannot be deemed to be the head of a household-of-one; a single person with an orthopedic disability is not handicapped within the meaning of section 50072 and therefore is not a "qualified tenant" for purposes of an enhanced relocation payment.*

We begin with the first sentence of section 50072. It defines "handicapped" as including a "family in which *the head of the household* is suffering from an *orthopedic disability* impairing personal mobility *or a physical disability* affecting his or her ability to obtain employment *or a single person with such a physical disability*, where the family or person requires special care or facilities in the home." (Italics added.)

Thus, a family in which the *head of household* possesses *either* an orthopedic disability *or* a physical disability may be deemed to be handicapped. On the other hand, a single person is defined as handicapped only by virtue of a physical disability; section 50072 does not provide that a single person with an orthopedic disability qualifies as handicapped. Where, as here, "different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning. [Citation.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.)

The second sentence of section 50072 shows how the first sentence would have read if the Legislature intended for "handicapped" to include a single person with an orthopedic disability. The second sentence provides: " 'Handicapped' also includes a family in which the *head of household* suffers from a *developmental disability* specified in subdivision (a) of Section 38010 *or a mental disorder* which would render him or her eligible to participate in programs of rehabilitation or social services conducted by or on behalf of a public agency, *or a single person with such a developmental disability or mental disorder.*" (§ 50072, italics added.) Thus, when it comes to a developmental disability or mental disorder, section 50072 treats a single person and a head of household identically. The second sentence of section 50072 supports the conclusion that had the Legislature intended in the first sentence to include a single person with an

7

orthopedic disability within the definition of "handicapped," it would have done so. The language of the statute reflects the Legislature clearly knew how to specify which conditions would entitle a single person to "handicapped" status. (See, e.g. *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 423 [Legislature clearly knew how to enact a statutory good cause exception to the mediation confidentiality statutes but chose not to do so]; *Watkins v. County of Alameda* (2009) 177 Cal.App.4th 320, 359-360, and cases cited therein.)

We are also guided by the principle that a reading of a statute rendering " 'some words surplusage is to be avoided' " (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110) and that every word, phrase and provision employed in a statute is intended to have meaning and to perform a useful function. (*In re Kelly D.* (2000) 82 Cal.App.4th 433, 437.) Here, the trial court's interpretation of section 50072 renders part of the statute surplusage. If, as the trial court found, a single individual can be the "head of [a] household of one person," the separate provisions in section 50072 pertaining to a single person become meaningless.

For all these reasons, we conclude a single person with an orthopedic disability is not handicapped within the meaning of section 50072 and therefore is not a "qualified tenant" for purposes of an enhanced relocation payment. (LAMC §§ 151.02, 151.09.G.)[6]

Finally, we observe that section 50072's wisdom in treating a head of household with an orthopedic disability differently from a single person with the same disability is a matter for the Legislature. (*Estate of Horman* (1971) 5 Cal.3d 62, 77.) If our interpretation of section 50072 is not what the Legislature intended, the Legislature may

---

[6] Because the term "head of household" as used in section 50072 is not ambiguous, it is unnecessary to resort to extrinsic interpretive aids, such as "statutes in pari materia, i.e. relating to the same matter or subject." (*Yassin v. Solis* (2010) 184 Cal.App.4th 524, 536.) However, we note that Wade's theory that a sole occupant can be the head of household "of a household of one person" cannot be reconciled with the definition of "head of household" as set forth in the Internal Revenue Code (26 U.S.C. § 2(b)) and its California counterpart. (Rev. & Tax. Code, § 17042; see also, Fin. Code, § 15100, subd. (c).)

amend the statute.  (*Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1256, fn. 10.)

## DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court to vacate its July 22, 2013 judgment and to enter a new and different judgment consistent with this court's determination that a single individual with an orthopedic disability is not handicapped within the meaning of section 50072, and therefore is not a "qualified tenant" for purposes of obtaining an enhanced relocation payment.  (LAMC §§ 151.02, 151.09.G.) The parties shall bear their own costs.

**CERTIFIED FOR PUBLICATION**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

9