Filed 4/16/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BERNADETTE TANGUILIG,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>NEIMAN MARCUS GROUP, INC.,<br><br>       Defendant and Respondent. | A141383<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-07-466079) |

## I.  INTRODUCTION

Appellant Bernadette Tanguilig brought suit against her former employer, Neiman Marcus Group, Inc. (NMG), alleging a combination of individual and class claims for wrongful termination in violation of public policy and multiple violations of the California Labor Code.  Early in the trial court proceedings, NMG successfully demurred to Tanguilig's wrongful termination and related claims, and several years later, moved to dismiss the remaining claims pursuant to California's five-year dismissal statute, Code of Civil Procedure section 583.310.[1]  The trial court granted the motion and dismissed the suit.  On appeal, Tanguilig urges us to overturn the five-year dismissal order, arguing primarily that the trial court erred in failing to toll the five-year clock under section 583.340, subdivision (c), for the period during which an order compelling co-plaintiff Juan Carlos Pinela to arbitration was in effect.  Tanguilig also appeals an order sustaining NMG's demurrer and an award of prevailing-party costs to NMG.

Finding no merit to any of the assigned errors, we affirm.

---

[1] All further statutory references will be to the Code of Civil Procedure unless otherwise specified.

1

## II. BACKGROUND

Tanguilig was employed by NMG, a Texas-headquartered luxury fashion retailer, at its San Francisco location from 2002 to 2007. At the core of this case is an arbitration agreement (the NMG Agreement or the NMG Arbitration Agreement) which NMG introduced in July 2007. NMG notified its employees that acceptance of the NMG Agreement was a mandatory condition of employment which would be implied for all employees who continued to work at any NMG location beyond July 15, 2007. Tanguilig took the view the NMG Agreement violated California public policy, objected to it, and unsuccessfully tried to negotiate with NMG over its terms. When this attempt at negotiation failed, Tanguilig chose not to return to work after July 15 to avoid being bound by the NMG Agreement, and as a result, NMG treated her failure to show up for work as a voluntary resignation.

Tanguilig sued, originally bringing this action in August 2007. She filed her First Amended Complaint (FAC) on December 19, 2007, alleging 10 causes of action against NMG: (1) wrongful termination in violation of public policy; (2) wrongful retaliation for refusing to consent to the NMG Agreement; (3) wrongfully requiring employees to agree to allegedly illegal terms in violation of Labor Code section 432.5; (4) failure to provide 10-minute rest periods in violation of Labor Code section 226.7;[2] (5) failure to provide 30-minute meal periods in violation of Labor Code section 512; (6) failure to pay overtime wages in violation of Labor Code sections 510 and 1198; (7) failure to pay minimum wage in violation of Labor Code section 1182.11; and (8) failure to pay wages owed at the time of discharge in violation of Labor Code sections 201 and 202. Tanguilig also alleged (9) she was entitled to civil penalties pursuant to Labor Code section 2699 *et seq.*, the Private Attorney General Act of 2004 (PAGA); and (10) NMG injured her and the general public by putting itself in an unfairly advantageous position in violation of the Unfair Competition Law (UCL), Business and Professions Code

---

[2] Counts 4 through 7 of the FAC also alleged a violation of Industrial Welfare Commission (IWC) Wage Order 4.

section 17200 *et seq.* Counts 1 through 8 were individual claims, while count 9 was a representative PAGA claim, and count 10 was something Tanguilig refers to as a "representative" claim under the UCL.

What followed was a long, complex series of procedural events over the next six years, eventually culminating in the dismissal of Tanguilig's claims in February 2014 pursuant to section 583.310. For the sake of clarity, we divide this procedural history into four major periods.

## A.    Tanguilig's Initial Suit

From August 2007 until March 2011, Tanguilig proceeded as the sole plaintiff in the action,[3] which was single-assigned to the Honorable Richard A. Kramer.

In March 2008, NMG demurred to counts 1, 2, 3, 9, and 10 of the FAC, and moved to strike additional portions of that complaint. In June of that year, Judge Kramer granted the relief sought by NMG, sustaining the demurrer as to counts 1, 2, 3, 9, and 10 without leave to amend, and striking substantial portions of the FAC, effectively eliminating claims 4, 5, 6, and 7 subject to amendment. From June to September 2008, Tanguilig sought writ review from this court. We ultimately denied her petition.

Tanguilig filed her SAC in October 2008, adding class action allegations. The SAC revived some of the claims from the FAC, alleging seven causes of action, including a PAGA claim and several other claims she sought to pursue on behalf of a putative class: (1) violation of Labor Code sections 226.7 and 512; (2) violation of Labor Code section 226; (3) violation of Labor Code sections 510 and 1198 and IWC Wage Order 4; (4) violation of Labor Code section 1194 and IWC Wage Order 4; (5) violation of Labor Code sections 201 and 202; (6) violation of Labor Code section 2699 et seq. (PAGA); and (7) violation of Business and Professions Code section 17200 et seq.

To support her class allegations, Tanguilig sought employee records and other information through various discovery requests directed to NMG over the next two years.

---

[3] Although Tanguilig brought suit under PAGA and her Second Amended Complaint (SAC) (filed in October 2008) added class action allegations, she did not file a motion for class certification during this period.

She says this proved difficult, as NMG was recalcitrant in responding to her discovery, although she eventually received enough information to move for class certification on June 22, 2011. Judge Kramer deferred decision on class certification, however, in part because of Tanguilig's decision to further amend her complaint.

## B.  Tanguilig Adds Pinela as a Co-Plaintiff

In March 2011, Tanguilig added as a co-plaintiff Juan Carlos Pinela, an employee at NMG's Newport Beach store from November 2007 to October 2009, who, unlike Tanguilig, had signed the NMG Agreement. Tanguilig and Pinela together filed a Third Amended Complaint (TAC), which reiterated the claims in the SAC, except it removed all references to the IWC Wage Order and added an additional claim.[4] Thus, the final list of claims asserted by Tanguilig and Pinela encompassed seven claims they sought to pursue on behalf of a putative class, as well as the PAGA claim.

The addition of Pinela created what would become a lasting roadblock in the case, the effects of which would be felt for years to come. Pinela was a signatory party to the NMG Agreement, and as a result, after he joined as a plaintiff, NMG filed a motion to compel him to arbitrate his claims. Refraining from hearing Tanguilig's and Pinela's class certification motion before resolving the motion to compel arbitration, Judge Kramer issued a ruling (the Arbitration Order) on the motion to compel in November 2011, finding the NMG Agreement enforceable. Judge Kramer thus held Pinela was bound by the terms of the NMG Agreement and could only pursue his non-PAGA claims in arbitration.

While ordering that Pinela could not go forward with his seven non-PAGA claims in superior court, Judge Kramer expressly permitted Tanguilig to proceed with her claims on behalf of the putative class except for any class members who were bound by the NMG Agreement. This caveat limited Tanguilig's class representation to current or former NMG employees who had not signed the NMG Agreement. Consistent with that

---

[4] This additional claim, failure to pay earned wages in violation of the Labor Code, became claim 5 in the TAC, changing claims 5, 6, and 7 in the SAC to claims 6, 7, and 8 in the TAC respectively.

4

limitation, Judge Kramer also stayed the portion of the PAGA claim asserted by Tanguilig and Pinela pertaining to anyone subject to the NMG Agreement. We denied writ review of the Arbitration Order in January 2012.

## C. The Reconsideration Period

Following our denial of writ relief, Tanguilig and Pinela asked Judge Kramer to reconsider the Arbitration Order. At the same time, Pinela took initial steps toward compliance with it by filing a request for arbitration with the American Arbitration Association. Before an arbitration panel was appointed, however, on November 8, 2012, Judge Kramer, proceeding on his own motion, vacated the Arbitration Order and issued a new order denying NMG's motion to compel arbitration. NMG appealed, and we subsequently affirmed Judge Kramer's order on reconsideration. (See *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227.)

Immediately after Judge Kramer vacated the Arbitration Order, Tanguilig renewed her efforts to bring the case to trial, requesting a trial date for at least her PAGA claim because there was no dispute that it was still within the trial court's jurisdiction. In a case management report filed on November 9, 2012, Tanguilig advised the court that the action was nearing the five-year deadline from the filing of the action (measured from the filing of the FAC, which first asserted the Labor Code and UCL claims that remained in the TAC), but took the position that under section 583.340, subdivision (c)—which provides for tolling when it is impossible, impracticable or futile to bring an action to trial—the running of the five-year dismissal statute was suspended while the Arbitration Order was in effect, and thus the actual deadline was still at least a year away. Rather than set the PAGA claim for trial immediately, Judge Kramer asked for further briefing on the request to set a trial date, and set a hearing on the matter for February 2013.

## D. Reassignment to Judge Karnow

In January 2013, the case was transferred from Judge Kramer to the Honorable Curtis E.A. Karnow. Before deciding the motion to set a trial date, Judge Karnow elected first to resolve a motion for summary adjudication filed by NMG. After denying

5

summary adjudication in September 2013, Judge Karnow issued an order in December 2013 setting Tanguilig's PAGA claim for trial commencing April 1, 2014.

In December 2013, a few months prior to the scheduled trial date on the PAGA claim, NMG moved to dismiss all of Tanguilig's remaining claims for failing to bring them to trial within five years pursuant to section 583.310. Tanguilig opposed the motion, arguing in part that the period of time when the Arbitration Order was in effect should be excluded from the five-year period under section 583.340, subdivision (c). Following two hearings in January and February 2014, Judge Karnow dismissed all of Tanguilig's claims—both the class claims and the PAGA claim—for her failure to bring them to trial within five years. Tanguilig appealed that ruling in March 2014.[5] Her March 2014 notice of appeal also assigned as error Judge Kramer's June 2008 order sustaining NMG's demurrer as to some of the claims in the FAC.

Immediately following the five-year dismissal, NMG, as the prevailing party, filed a costs memorandum, to which Tanguilig responded with a motion to tax costs. In April 2014, Judge Karnow awarded costs to NMG, but taxed the award for court reporter fees from November 2011 to February 2014. Tanguilig appealed the costs order in June 2014.

## III.   DISCUSSION

Tanguilig contends the five-year period for bringing this action to trial under section 583.310 was tolled by a total of 842 days. In support of her tolling argument, Tanguilig claims three discrete periods should be excluded from the five-year period under section 583.340, subdivision (c): (1) the 351 days during which Judge Kramer's Arbitration Order was in effect (i.e., from November 2011 to November 2012); (2) the 99-day period beginning in June 2008 when she sought writ review from this court following the dismissal of her FAC; and (3) the 392-day period from November 2012 to December 2013 following her request to set her PAGA claim for trial. Adding these three periods together, Tanguilig claims a total cumulative extension of the statutory

_____

[5] Judge Karnow only dismissed Tanguilig's claims, not Pinela's. Because Pinela's claims were stayed while the Arbitration Order was on appeal, the five-year period to bring his claims to trial had not expired. (NMG did not move to dismiss Pinela's claims.)

6

deadline for bringing her case to trial until sometime in April 2015. The dismissal of her TAC before that date, she contends, was error.

On this, the central issue presented by Tanguilig's appeal, we reject her interpretation of section 583.340, subdivision (c), and affirm Judge Karnow's dismissal order under section 583.310. In arriving at this disposition, we need not go beyond the first of Tanguilig's claimed tolling periods. Because she is not entitled to tolling for the 351 days Judge Kramer's Arbitration Order was in effect, the five-year deadline under section 583.310 for commencing trial expired in December 2012 when trial had not commenced as of that point. We conclude that Tanguilig waived her tolling contentions based on the other two periods by failing to raise them properly in the trial court.

Our ultimate conclusion on the five-year statute issue—that Judge Karnow did not abuse his discretion in dismissing Tanguilig's claims under section 583.310—dictates the result on the next assigned error, focusing on Judge Kramer's dismissal of certain of her claims early in the history of the case. By this appeal, Tanguilig seeks review of an order sustaining NMG's demurrer in 2008 and dismissing her claims 1, 2, 3, 9 and 10 as originally pleaded. That ruling is moot because these claims would have been subject to dismissal under section 583.310 eventually, even had Judge Kramer overruled NMG's demurrer and kept them in the case. Thus, the challenged rulings did not prejudice Tanguilig, and absent a showing of prejudice, there is no basis for reversal.

Finally, we decline to disturb the trial court's award of costs to NMG. Tanguilig's primary attack on the cost award assumes she is entitled to reversal on the five-year issue, which she is not. She also claims some allocation of costs should have been made to account for the victory Pinela ultimately achieved on appeal, but we see no basis to disturb the trial court's adverse burden of proof determination against her on the "prevailing party" determination underlying the cost award. By the time Tanguilig's case was dismissed in February 2014, Pinela had staved off arbitration, Judge Kramer having vacated his order compelling him to arbitrate. That issue was then on appeal, but nothing prevented Tanguilig from arguing for allocation on the ground NMG had only prevailed in part. She failed to do so.

We now turn to a fuller explanation of our reasoning, taking each of these issues in turn.

**A.      The Dismissal Under Section 583.310**

1.      *Applicable Legal Principles and Standard of Review*

Section 583.310 provides that "an action shall be brought to trial within five years after the action is commenced against the defendant."  " ' "A 'trial' within the meaning of section 583 is the determination of an issue of law or fact which brings the action to the stage where final disposition can be made."  [Citation.]'  [Citation.]  A case is brought to trial if it has been assigned to a department for trial, it is called for trial, the attorneys have answered that they are ready for trial, and proceedings begin, even if the proceeding is a motion for judgment on the pleadings."  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 723 (*Bruns*).)  Absent a qualifying stipulation to "extend the time within which an action must be brought to trial" under section 583.330, or tolling of the allowed five-year period, dismissal of an action that has not reached trial at the end of five years is mandatory under section 583.360.   Under the press of this statutory requirement, anyone pursuing an "action" in the California courts has an affirmative obligation to do what is necessary to move the action forward to trial in timely fashion.

Normally, " '[c]ommencement' of an action for purposes of section 583.310 . . . is firmly established as the date of filing of the initial complaint."  (*Brumley v. FDCC California, Inc.* (2007) 156 Cal.App.4th 312, 318 (*Brumley*), citing *Kowalski v. Cohen* (1967) 252 Cal.App.2d 977, 980.)  But where an amended complaint alleges new causes of action which do not "(1) rest on the same general state of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 409, italics omitted), then the relation back doctrine dictates the commencement of the action for purposes of section 583.310 must be the filing date of the amended complaint.  (See generally *Brumley*, *supra*, 156 Cal.App.4th 312; see also *Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146.)  While Tanguilig filed her initial complaint in August 2007, her FAC alleged seven additional claims, including the PAGA

claim at issue here, that the trial court assumed, in deference to her, did not relate back to the initial complaint. Thus, the court gave her the benefit of the doubt that the commencement of the five-year period here began in December 19, 2007, when she filed her FAC. Under this frame of analysis, which is not challenged on this appeal, the statutory five-year period expired on December 19, 2012.

Section 583.340 provides that, "[i]n computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] . . . [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." Section 583.340 is construed liberally, consistent with the policy favoring trial on the merits. (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 693.) Because the purpose of the dismissal statute "is to prevent *avoidable* delay, . . . [section 583.340, subdivision (c)] makes allowance for circumstances beyond the plaintiff's control, in which moving the case to trial is impracticable for all practical purposes." (*De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 371 (*De Santiago*).) To avoid dismissal under the section 583.340, subdivision (c) exception, a plaintiff must prove (1) a circumstance establishing impossibility, impracticability, or futility, (2) a causal connection between the circumstance and the failure to move the case to trial within the five-year period, and (3) that she was reasonably diligent in prosecuting her case at all stages in the proceedings. (*Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 326, 328; *De Santiago*, *supra*, 155 Cal.App.4th at pp. 372, 375–377; see *Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 471, 473.)

Courts evaluate impossibility, impracticability, or futility " 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' . . . A plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing

9

exceptions of impossibility, impracticability, or futility. . . . Determining whether the [section 583.340,] subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' . . . ' "[I]mpracticability and futility" involve a determination of " 'excessive and unreasonable difficulty or expense,' " in light of all the circumstances of the particular case.' " (*Bruns*, *supra*, 51 Cal.4th at pp. 730–731, italics and citations omitted.) " '[S]o long as the court may conclude that there was a period of impossibility, impracticability or futility, over which the plaintiff had no control . . . , the court is required to toll that period even if there is ample time after said period of impracticability within which to go to trial.' " (*Chin v. Meier* (1991) 235 Cal.App.3d 1473, 1478; see *Hattersley v. American Nucleonics Corp.* (1992) 3 Cal.App.4th 397, 402.)

Appellate review of a trial court's determination of whether section 583.310 was tolled for impossibility, impracticability, or futility is limited. This is because trial courts are best equipped to evaluate the complicated factual matters that could support such a finding. (*Bruns*, *supra*, 51 Cal.4th at p. 731.) We therefore review a trial court's tolling decision for abuse of discretion, giving it the usual deference accorded by that standard, and reversing only if no reasonable basis exists for the trial court's decision. (See *ibid*; see also *De Santiago, supra,* 155 Cal.App.4th at p. 371; *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1271.) In the absence of an abuse of discretion, we will affirm even if we would have ruled differently. (*Ibid.*) Of course, our review may be more searching in some circumstances. If, for example, we are called to determine whether the trial court properly interpreted section 583.310, section 583.340, subdivision (c), or some other question of law, those are matters on which we may substitute our judgment as an appellate court. In such a case, we review the trial court's interpretation de novo. (*Bruns*, *supra*, 51 Cal.4th at p. 724; *City of Los Angeles v. Superior Court* (2015) 234 Cal.App.4th 275, 281; *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.)

2.      *It Was Not Impossible, Impracticable or Futile to Commence Trial in the Action During the 351-Day Period the Arbitration Order Was In Effect.*

Judge Karnow was within his discretion to rule that a trial of Tanguilig's claims was not impossible, impracticable or futile during the 351-day period the Arbitration Order was in effect.  In so ruling, he considered and rejected three specific circumstances that Tanguilig claimed justified tolling during this period:  (1) NMG's alleged delay in producing evidence in response to class discovery requests; (2) the alleged delay of Tanguilig's class certification motion due to NMG's motion to compel arbitration of Pinela's claims; and (3) the order sending Pinela's claims to arbitration, which allegedly blocked that portion of the case from being set for trial.  With respect to the first two of these circumstances, Judge Karnow found that "time spent on those sorts of routine activities is not excluded from the calculation of the five year period."  With respect to the third circumstance, he determined Tanguilig made no factual showing that she could not have brought her claims to trial while Judge Kramer's order compelling Pinela's claims to arbitration was in effect.  Indeed, he noted that Tanguilig eventually did file a motion to set her PAGA claim for trial—without Pinela's claims.  Because " '[t]he question of impossibility, impracticability, or futility is best resolved by the trial court, which "is in the most advantageous position to evaluate these diverse factual matters in the first instance" ' " (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1100 (*Gaines*)), we decline to second-guess these findings.

Apparently recognizing that our review of Judge Karnow's findings on the issue of impossibility, impracticability or futility is highly deferential, Tanguilig's primary tolling argument on appeal is not factual, but legal.  She seeks de novo review on the ground that Judge Karnow erred legally by misinterpreting the scope of Judge Kramer's Arbitration Order.  "So long as the . . . Arbitration Order—and its stay of any PAGA claim on behalf of . . . [e]mployees [who signed the NMG Agreement]—remained in place," Tanguilig argues, "it would have been impossible for [her] to bring to trial a representative PAGA claim covering all of the employees who were 'employed by NMG in California from December 19, 2004 to the present.'  [Citation.]  [¶] Similarly, it would have been

11

impossible for Tanguilig to try, or to seek certification of, claims brought on behalf of the entire putative class until after Judge Kramer vacated the Arbitration Order." In essence, she reads the statutory term "action" in section 583.310 to mean every one of her claims, in the full breadth she pleaded them. And since some aspects of those claims— specifically, the allegations involving employees, like Pinela, who were signatory to the NMG Arbitration Agreement—were subject to a stay pending arbitration, it was impossible to try the *entire* action.

The argument is creative, but ultimately misguided. In support of her reading of section 583.310, Tanguilig relies primarily on *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 (*Nassif*), where a panel of the Fourth District Court of Appeal, Division Two, defined an action as "the proceeding or suit and not . . . the cause of action." That case concerned a plaintiff who, following the dismissal of his suit for failing to bring it to trial within three years, tried to evade the dismissal by filing a different suit against the same defendant alleging the same cause of action. (*Id.* at pp. 1296–1297.) The defendant, in response, moved to dismiss the second suit pursuant to section 583.310, arguing that because the two suits alleged the same cause of action, they should be combined to determine when section 583.310's five-year period expired. (*Ibid.*) Although reluctant to do so in light of what it considered to be the plaintiff's bad faith, the Court of Appeal still found for the plaintiff, holding the word "action" in section 583.310 refers to a suit and not a "cause of action." (*Id.* at p. 1298.) We read the *Nassif* holding as pertaining to a situation where different causes of action in different suits are combined to determine the statute's expiration date. That is not this case.

Judge Karnow, too, saw *Nassif* as distinguishable, observing that he could find "no good authority . . . that the statute at issue, §583.310 and its tolling provisions, apply to entire 'actions' and not any component claims." He found better guidance in *Khoury v. Comprehensive Health Agency, Inc.* (1983) 140 Cal.App.3d 714 (*Khoury*), which involved a suit against the insurance companies Blue Shield and Comprehensive Health. (*Id.* at p. 716.) Both defendants moved to compel arbitration, but only Blue Shield's motion was granted. (*Ibid.*) While the plaintiff was arbitrating his claim against Blue

12

Shield, the five-year period elapsed for the action against Comprehensive Health, which moved to dismiss the suit pursuant to former section 583, the predecessor to section 583.310. (*Ibid.*) The plaintiff argued his action against Comprehensive Health had been tolled because it was impossible, impracticable, or futile to bring the case against Comprehensive Health to trial while he was arbitrating his claim with Blue Shield. (*Id.* at p. 717.) The Court of Appeal held, however, that nothing prevented a trial against Comprehensive Health, even though the plaintiff might have to use the same evidence and witnesses in both actions. (*Id.* at pp. 717–718.) Thus, even though it was clearly impossible, impracticable, or futile for the plaintiff to bring her entire case to trial against both defendants together, the Court of Appeal still affirmed the dismissal for exceeding the five-year statutory period. We agree with Judge Karnow that that holding applies here.

Of more significance here than either *Nassif* or *Khoury* is the California Supreme Court's decision in *Bruns*, *supra*, 51 Cal.4th at page 717. Tanguilig claims *Bruns* supports her "entire action" argument, but we think its holding cuts against her. There, the Supreme Court analyzed whether a partial stay tolled the running of the five-year period under a different subdivision of section 583.340, subdivision (b), ultimately holding only stays of the entire action toll the statute under that exception. (*Bruns, supra,* at pp. 724–730.) Because partial stays "are governed, if at all, by subdivision (c)" (*Bruns, supra,* at p. 730), the court remanded the matter back to the Court of Appeal to determine whether the trial court abused its discretion in refusing to toll the statute under section 583.340, subdivision (c), observing that "[t]he question of impossibility, impracticability, or futility is best resolved by the trial court . . . ." (*Id.* at p. 731, citing *Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 555 (*Brunzell*).) In this case, Judge Karnow saw the Arbitration Order as a partial stay. With the exception of PAGA claims, he read the Arbitration Order as having stayed further litigation of Pinela's claims, but leaving Tanguilig free to pursue her own claims. (See Dismissal Order at pp. 2–3 ["Expressly, Judge Kramer's order did not stay any of Tanguilig's PAGA claims; nor the claims of anyone not subject to an arbitration agreement with the defendant. The only

13

PAGA claims stayed by Judge Kramer's order were those of 'all persons subject to the arbitration agreement' but not, as I have said, PAGA claims of either Pinela or Tanguilig."].)

Under *Bruns*, Judge Karnow's task was to "determine what [was] impossible, impracticable, or futile 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying [section 583.340] to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' " (*Bruns*, *supra*, 51 Cal.4th at p. 730.) As the *Bruns* court explained, "[d]etermining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' " (*Id.* at p. 731; see *Brunzell*, *supra*, 2 Cal.3d at p. 555 [the court must "examine the relationships between the causes of action, the expense and difficulty likely to be engendered by separate trials, the diligence and good faith efforts of the plaintiff, the prejudice or hardship to the instant defendants, or other relevant matters"].) And on this question, the plaintiff bears the burden of proof. (*Bruns*, *supra*, 51 Cal.4th at p. 731.)[6]

Applying *Bruns*, was it impossible, impracticable, or futile to bring Tanguilig's case to trial in timely fashion after Judge Kramer sent Pinela and all other signatories to the NMG Arbitration Agreement to arbitration? Judge Karnow clearly believed it was

_____

[6] Tanguilig cites as recent authority decided post-briefing in this case our Supreme Court's acknowledgment in *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744 (*Mountain Air*), that an " 'action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment.' " (*Id.* at p. 753, quoting *Nassif, supra,* 214 Cal.App.3d at p. 1298.) That case does not aid Tanguilig here. *Mountain Air* addresses whether the contractual term "any legal action or any other proceeding" includes the assertion of an affirmative defense to a claim, and holds that it does not. (*Mountain Air,* at pp. 753–755.) The court distinguishes *Nassif*, as we do, holding that the general proposition for which it was cited there did not apply. Among the cases cited by the Supreme Court in the course of its discussion pointing out that *Nassif* did not apply was *Bruns*. (*Id*. at p. 755.)

14

not, and we see no abuse of discretion in that determination. It was irrelevant whether, as Tanguilig contends, employees who signed the NMG Arbitration Agreement were beyond the jurisdiction of the trial court, or whether her claims were effectively "split" into claims on behalf of signatories and claims on behalf of non-signatories (much ink has been spilled on this question in the briefs before the trial court, and here again on appeal). At most, the impact of the Arbitration Order on signatory employees might have been relevant, ultimately, to *the scope of the relief* that could be ordered, or perhaps to who might be bound by the judgment; but nothing in it, no matter how interpreted, prevented Tanguilig from taking her claims to trial, which is what Judge Karnow focused upon. In the end, Judge Karnow concluded that Tanguilig failed to bear her burden of proof. Unlike *Kaye v. Mount La Jolla Homeowners Assn.* (1988) 204 Cal.App.3d 1476, 1481–1482, 1485 (*Kaye*), another case cited and relied upon by Tanguilig, where the elimination of punitive damages claims by summary adjudication on the eve of trial would have limited the scope of admissible evidence,[7] thus justifying deferral of trial until a pending writ proceeding in the Court of Appeal was resolved, she made no effort to show that the *evidentiary scope of a trial* would have been affected in some fashion by Judge Kramer's Arbitration Order. Noting the intensely practical issues involved in evaluating claims of impossibility, impracticability and futility, Judge Karnow pointed out, quite simply, "Tanguilig makes no showing on any of those issues."

Given the fact-sensitive nature of the section 583.340, subdivision (c), inquiry, normally that would be the end of the matter on appeal, but Tanguilig's claim of legal error and request for de novo review complicates things somewhat. As noted above, she contends Judge Karnow botched his reading of the Arbitration Order; according to her, he mistakenly thought that "none of . . . [her] . . . PAGA claims were stayed," when, as a

---

[7] Then, as now, Civil Code section 3295, subdivision (d), provides that "[e]vidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression, or fraud."

15

matter of law—at least in her reading of the Arbitration Order—she was precluded from proceeding on those portions of her claims (both her PAGA claim and her class claims) concerning employees who signed the NMG Arbitration Agreement. Whether she is right or wrong about Judge Karnow's purported failure to recognize that portions of her claims were stayed—some of the language in the Arbitration Order is indeed ambiguous on the point—the conclusion she urges upon us, that she is entitled to tolling for impossibility, impracticability or futility while the Arbitration Order was in effect, is still unsustainable. Undergirding the line of argument Tanguilig advances about the correct interpretation of the Arbitration Order is the same flawed premise on which her "entire action" argument rests: She assumes she had a right to proceed to trial with every claim she pleaded, in its full breadth, and she seems to believe that any obstacle to trying all of those claims, as expansively as she alleged them, qualifies as a condition of "impossibility" within the meaning of section 583.340, subdivision (c). That is not so as a general matter—which is why the applicability of this exception is situational—and it is not so on this record either.

"[C]ase law" under section 583.310 has "long held that '[f]or the tolling provision of section 583.340, subdivision [(c)] to apply, there must be "a period of impossibility, impracticability or futility, *over which plaintiff had no control,*" ' because the statute is designed to prevent *avoidable* delay." (*Gaines*, *supra*, 62 Cal.4th at p. 1102.) The fact is Tanguilig chose, apparently as tactical matter, to include within the scope of her PAGA claim and within the putative class she sought to represent, employees who had signed an arbitration agreement. Surely she knew—at the least she should have known—the inevitable consequence: Pleading claims that encompassed signatories to an arbitration agreement was bound to draw a motion to compel arbitration and potentially entangle the rest of the case in delays arising out of that motion, which is exactly what happened. Bearing in mind the employment litigation setting before us, we view any procedural complexities and delays occasioned by the Arbitration Order as not only predictable, but more importantly, invited. If entry of the Arbitration Order staying Pinela's claims had

16

some collateral delaying effect on the pursuit of Tanguilig's claims, we view it as avoidable delay and thus conclude it cannot justify tolling.

Finally, Tanguilig insists that while the Arbitration Order was in effect it was, at a minimum, impossible to proceed with the motion for class certification *jointly* filed by Tanguilig and Pinela or to try all class claims *jointly* asserted by them. We see this as just a variation of the argument that any obstacle to trying every claim she pleaded, in the full breadth she pleaded it, justified tolling across the board. We reject it for the reasons outlined above, but we also think the argument, framed in this way to highlight what Tanguilig characterizes as "joint" litigation by allied parties, conflicts with *Brumley, supra,* 156 Cal.App.4th 312. In that case, William Brumley filed an action for asbestos-related injuries but died during the litigation. His widow and children could have filed a separate wrongful death action at that point, but instead filed an amended complaint joining their claims with the surviving claim of the estate. The trial court treated the joined claims as relating back to the original personal injury complaint, and dismissed the entire action under the five-year statute. (*Id*. at p. 316.) Our First District Court of Appeal, Division One, colleagues reversed, holding that the widow and children should not be penalized for having opted to join their claims (which did not relate back to the original complaint) with Brumley's. (*Id.* at pp. 320–321, 325–326.) Like the widow and children in *Brumley*, Pinela could have filed his own separate action. Indeed, that is what another NMG employee—Sheila Monjazeb—did when she brought a related wage and hour class action against NMG alleging the same or similar claims in *Monjazeb v. Neiman Marcus Group, Inc.,* San Francisco Superior Court Case No. CGC-10-502877, Court of Appeal, First Appellate District, No. A137491. The fact Pinela and Tanguilig saw strategic benefits to joining their claims together in a single lawsuit did not fuse their claims into an inseparable, unitary whole. To the extent Tanguilig now seeks an advantage because she and Pinela opted to join their individual actions together—giving

17

her, in effect, an exemption from the five-year rule while Pinela was in arbitration—*Brumley* is to the contrary.[8]

3.     *Additional Tolling Periods:  The 99-Day Period and the 392-Day Period*

Turning to Tanguilig's two additional claimed tolling periods—the 99-day period beginning in June 2008 when she sought writ review from this court following the dismissal of her FAC,[9] and the 392-day period from November 2012 to December 2013 following her request to set her PAGA claim for trial—we conclude that her claim to these additional tolling periods has been waived.

It is elementary that an appellant may not raise a new theory on appeal when the theory rests on facts that were either controverted or not fully developed in the trial court. (*People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 40.)  This rule of waiver specifically applies to fact-based tolling arguments.  (See *Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1462–1463.)  Tanguilig acknowledges in her reply brief that she failed to argue tolling in the trial court for the 99-day period.  Her claim to tolling for that period has therefore been waived.  While conceding failure to raise the 99-day period as a

---

[8] Tanguilig suggests *Brumley* should be read as having created a special exception to what she claims is the general rule that the term "action" in section 583.310 means the entire action, an exception that encompasses only suits involving causes of action that do not relate back to the original complaint.  We do not read the case so narrowly.  The *Brumley* court noted that *Barrington*, *supra*, 39 Cal.3d at pages 155–156 was "willing to treat causes of action separately under the statute, even though they were part of the same action," and "expressly rejected a similar argument made by the defendants . . . , concluding that there was no evidence the Legislature intended to preclude application of the relation-back doctrine in these circumstances."  (*Brumley*, *supra*, 156 Cal.App.4th at p. 322.)  By the same token, it does not follow that when the Legislature created section 583.340's discretionary exceptions to section 583.310 it intended to preclude the discretionary aspect of those exceptions whenever a suit could not go forward in its entirety.  If that were true, the section 583.340 exceptions would be superfluous.

[9] We denied Tanguilig's writ petition on September 8, 2008.  She calculates the 99-day tolling period as extending from June 30, 2008 (the date Judge Kramer entered his order as to the demurrer and motion to strike) until 30 days after this court's denial of writ review (since Judge Kramer had set that as the deadline to file a Second Amended Complaint).

18

ground for tolling, Tanguilig sharply disputes NMG's contention that she failed to argue the 392-day period in the trial court and even goes so far as to suggest it is a misrepresentation of the record for NMG to claim she was silent on the issue.

Upon close review of the record, we think NMG has the better of the argument concerning whether Tanguilig preserved a claim to tolling during the 392-day period. She did ask for the setting of a trial date within days of Judge Kramer's vacatur of his Arbitration Order in November of 2012, but when faced with NMG's motion to dismiss on five-year grounds, the only tolling argument she asserted in her brief opposing the motion was a contention the five-year statute was tolled during the 351-day period the Arbitration Order had been in effect. Nowhere in that opposition did she argue that the 392 days she spent waiting for a ruling on her request for trial setting should be excluded from the five-year calculation. If she had squarely presented the 392-day tolling issue at that point, as she does now on appeal, Judge Karnow could have made the inherently fact-bound assessment of impossibility, impracticability, or futility for this specific period. He did not mention the issue in his February 4, 2014 order of dismissal. And as we read the record, he was silent on it for a reason: He was not asked to address it.

According to Tanguilig, Judge Karnow never considered the 392-day tolling issue because, in his order of dismissal, he relied solely on what she claims was his erroneous rejection of her claim to the 351 days. (Appellant's Reply Brief at p. 13 ["In light of his erroneous determination that entry of the Arbitration Order did not toll the statute, Judge Karnow never considered whether the 351 days tolled while the Order was in effect could have run out after Tanguilig had asked for a trial date or while a fully-briefed, trial-setting motion was pending."].) She implies he chose not to address it, deciding to resolve the five-year issue on narrower grounds. But that is not what happened. What happened is that, *after* Judge Karnow dismissed the case on five-year grounds in his order of February 4, 2014, she sought clarification of the order, focusing not on the 392-day period, but rather on her contention that Judge Karnow had misread Judge Kramer's Arbitration Order. That misinterpretation, so she claimed, led Judge Karnow to err in concluding it

19

was not impossible, impracticable or futile for her to bring her claims to trial *during the 351-day period*.

Indulging Tanguilig's request for clarification on this specific point, Judge Karnow allowed the parties to present supplemental briefs. These briefs were filed simultaneously on February 21, 2014. In the introduction to Tanguilig's supplemental brief, she explains why she sought clarification and what relief she requested, as follows: "In its February 4, 2014 Order on Defendant's motion to dismiss Tanguilig's claims pursuant to C.C.P. § 583.310, this Court did not address the effect of [the Arbitration Order] . . . precluding Tanguilig from proceeding with any of her claims to the extent that they were brought on behalf of [employees who signed the NMG Arbitration Agreement]. It should do so now and should hold that—even if Judge Kramer's decision to divide Tanguilig's claims from Pinela's claims does not establish a basis for tolling the five-year period of C.C.P. § 583.310—rulings subdividing and partially staying Tanguilig's own claims made it impossible, impracticable or futile for her to bring those claims to trial until Judge Kramer's Arbitration Order was vacated. In the alternative, the Court should limit any order of dismissal to apply only to claims brought . . . on behalf of [employees who did not sign the NMG Arbitration Agreement]."

As announced in the introduction to Tanguilig's supplemental brief, virtually all of the discussion in her 20 pages of supplemental argument addressed the meaning of Judge Kramer's Arbitration Order, its effect on claims she brought "on behalf of" employee signatories to the NMG Arbitration Agreement, and how that issue impacted Judge Karnow's analysis of her claimed 351-day tolling period. Then, on page 17 of the brief, in a short passage at the end of a section of an argument discussing tolling generally, without any sub-section heading specifically flagging the 392-day period as an issue, the following contention appears as a last argument, framed in the alternative: "Whether the December 20, 201[2][10] deadline for bringing the action to trial was extended by 351 days,

---

[10] The actual text says "December 20, 2013," which appears to be a typographical error. Two paragraphs earlier, when setting up the premise of this tolling section of the argument, Tanguilig states: "The five-year period of C.C.P. § 583.310 is . . . calculated

20

a greater or lesser number of days, or not at all, the deadline could not have expired while Tanguilig's request for a trial date was pending. . . . [¶] . . . While that motion remained pending—until December 10, 2013—it necessarily was impracticable, and impossible, for Tanguilig to proceed to trial."

Unquestionably, this alternative argument tucked at the end of Tanguilig's supplemental brief puts forth in specific terms the 392-day tolling contention she now urges on appeal. But given the procedural posture in which the argument first surfaced, the question arises whether she did enough to preserve it for appeal. We think not.

It seems clear that Judge Karnow treated the supplemental briefing following his February 4 order as nothing more than an opportunity for the parties to provide argument on Tanguilig's claim that he had misinterpreted Judge Kramer's Arbitration Order, an issue that was only relevant because, as the tolling issue was framed in his order of dismissal—which tracked how the parties framed it in the briefs on the motion to dismiss—his tolling analysis turned on the 351-day period during which the Arbitration Order was in effect. After considering the supplemental briefs, and holding an additional hearing on February 26, 2014, Judge Karnow issued an "Order Clarifying Order of February 4, 2014" addressing only the interpretive issue Tanguilig had raised, and nothing more. In a footnote, Judge Karnow noted the broader scope of argument offered by Tanguilig in her supplemental brief, but said that he was "treating [Tanguilig's] submission . . . as a request for clarification" of his February 4 order. To the extent her supplemental brief presented new arguments for tolling (i.e., the claimed 392-day tolling period), we view it as an untimely motion for reconsideration. Among other problems with raising a new issue in that fashion, it deprived NMG of a fair opportunity to respond, particularly since Judge Karnow was proceeding upon simultaneously-filed briefs. Accordingly, we conclude that Judge Karnow did not address the claimed 392-day period

---

from the date the FAC was filed—December 19, 2007. [Citation.] Five years from that date is December 20, 2012."

because Tanguilig failed to raise the issue properly. It is too late to ask us to address the issue now on appeal.[11]

**B.      The Demurrer**

In addition to her attack on the five-year dismissal, Tanguilig appeals from Judge Kramer's 2008 order sustaining NMG's demurrer to several of the counts in the FAC, requesting she be allowed to pursue those claims along with those asserted in the TAC. As she correctly points out, a ruling on a demurrer is subject to review following an appealable order of dismissal. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1.) Because Judge Karnow's dismissal of Tanguilig's entire suit in 2014 amounts to an appealable order of dismissal, the 2008 ruling on the demurrer is now appealable.

---

[11] We note that, when, in November 2012, Tanguilig requested a trial date, the five-year statute was about to expire in a matter of weeks, on December 19, 2012. Thus, the situation called for some urgency. But rather than raise an alarm and communicate to Judge Kramer the need to address the issue of trial-setting immediately, or to order a stay—which is what happened in *Kaye*, *supra*, 204 Cal.App.3d 1476, for example (see *id*. at p. 1482 [plaintiffs immediately moved for stay upon filing writ proceeding they later claimed tolled the five-year statute and then, when no stay issued, immediately moved to specially set the case for trial])—Tanguilig took the legal position that the five-year statute had been tolled during the 351 days the Arbitration Order was in effect and thus that the running of the statute was at least a year away. That position, it turns out, was founded on an incorrect legal assumption. Tanguilig was certainly entitled to take whatever legal position she wished to take on the 351-day issue as long as it was taken in good faith (we do not question that hers was), but it seems to us there is a legitimate question here whether, in November and December 2012, she should have taken more proactive steps to hedge against the risk that her legal position on tolling might be wrong. It might well have been a "tough sell" to obtain an accelerated trial date in a complex case within five weeks, but if so, that only begs the question whether more could have and should have been done to prepare the case for trial over the immediately preceding 351-day life of the Arbitration Order. Framed in this way, the question of impossibility, impracticability or futility for the 392-period was therefore factually bound up with assessment of the same issue for the 351-day period. To the extent Tanguilig now wishes to claim some different analysis should apply to the 392-day tolling issue, she was obligated to present the argument to Judge Karnow, squarely, for decision in the first instance. On appeal, we are unwilling to undertake the kind of record-specific assessment that would be required to determine whether, in November 2012, it was feasible for Tanguilig to commence trial within six weeks, and if not, why not.

22

Appealable though Judge Kramer's 2008 ruling on demurrer may be, we need not address the merits of this aspect of Tanguilig's appeal. To obtain reversal, she must show an asserted error by the trial court " 'was sufficiently prejudicial to justify a reversal.' " (*Kyne v. Eustice* (1963) 215 Cal.App.2d 627, 635 (*Kyne*).) Prejudicial, in this case, means that the error "substantially affect[ed] the rights and obligations of the appellant as to result in a miscarriage of justice." (*Ibid.*) If a suit would have failed or been dismissed even in the absence of an asserted error, the error is plainly not prejudicial to the appellant and thus reversal is not warranted. (*Johnson Rancho County Water Dist. v. County of Yuba* (1963) 223 Cal.App.2d 681, 682, 684–685; *Kyne*, *supra*, 215 Cal.App.2d. at pp. 635–636; *Zeppi v. Beach* (1964) 229 Cal.App.2d 152, 161.) Here, because Tanguilig failed to bring her suit to trial within the statutory five-year period, the claims at issue on demurrer would have been subject to dismissal and properly dismissed under section 583.310 even if we were to agree that the demurrer was erroneously sustained in some respect. Accordingly, this issue is moot.

## C.    The Costs Award

As a final matter, Tanguilig asks that we reverse the trial court's award of costs to NMG if we reverse either the dismissal order or the order sustaining the demurrer, as NMG will then no longer be considered a prevailing party. (*Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1376 [the question of entitlement to costs depends on whether a party qualifies as a prevailing party] (*Acosta*).) Because we do not order such a reversal, the costs award is appropriate. Nothing has changed. Thus, we see no reason to disturb the trial court's prevailing party determination.

In one last attempt at appellate relief on the costs issue, Tanguilig contends because she and Pinela jointly filed the TAC, and because Pinela can still proceed with his putative class claims against NMG, NMG cannot be considered the prevailing party as to him. When Tanguilig raised this argument below, Judge Karnow found that Tanguilig failed to meet her burden to show which costs were allocable to Pinela. (See *Acosta*, *supra*, 129 Cal.App.4th at pp. 1376, 1380 [plaintiffs have the burden to show costs are allocable to a specific plaintiff when a defendant prevails against all plaintiffs];

23

*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 540 [trial court need not allocate costs among defendants if unsuccessful defendant fails to do so].) Because she offers no reason why Judge Karnow's adverse burden of proof determination on cost allocation was incorrect, we see no reason to disturb his cost award on this ground.

## IV.    DISPOSITION

Affirmed.

24

_____
Streeter, Acting P.J.

We concur:


_____
Reardon, J.


_____
Schulman, J.[*]

_____

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A141383/*Tanguilig v. Neiman Marcus Group, Inc.*

25

A141383/*Tanguilig v. Neiman Marcus Group, Inc.*

Trial court:          San Francisco City & County

Trial judge:          Hon. Richard A. Kramer; Hon. Curtis E.A. Karnow

Counsel:

Cornerstone Law Group, Gordon W. Renneisen, Harry G. Lewis, and Kenneth A. Frost III; Law Offices of Douglas A. Kahn and Douglas A. Kahn for Plaintiff and Appellant.

Jackson Lewis, David S. Bradshaw, Patrick C. Mullin; Jones Day and Matthew J. Silveira for Defendant and Respondent.