Filed 6/29/21  Villegas v. Six Flags Entertainment CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANDREW VILLEGAS et al., Plaintiffs and Appellants, v. SIX FLAGS ENTERTAINMENT CORPORATION, Defendant and Respondent. | B295352 (Los Angeles County Super. Ct. No. BC505344) |

APPEAL from judgment of the Superior Court of Los Angeles County, Ann I. Jones, Judge. Affirmed.

Matern Law Group, Matthew J. Matern, Scott A. Brooks, Tagore O. Subramaniam; Altshuler Berzon, Michael Rubin and James M. Finberg for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Jason W. Kearnaghan, Robert E. Mussig and Matthew G. Halgren for Defendant and Respondent.

# INTRODUCTION

This is an appeal from a judgment dismissing plaintiffs' putative class action for failure to bring it to trial within five years, as required by Code of Civil Procedure section 583.310.[1] Plaintiffs contend the trial court erred by failing to exclude certain time periods from the five-year calculation during which, according to plaintiffs, the case was either stayed and/or it was impossible or impracticable to bring the case to trial. Plaintiffs also contend the court erred by denying their motion for class certification.

We conclude the court properly dismissed the action pursuant to section 583.310. Because this conclusion is case dispositive, we need not address whether the court erred by denying class certification. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and appellants Andrew Villegas, Jennifer Gilmore, Dustin Liggett, and Hans Gundelfinger (collectively, plaintiffs) worked for defendant and respondent Magic Mountain, LLC, erroneously sued as Six Flags Entertainment Corporation (Magic Mountain). On April 9, 2013, plaintiffs filed their complaint, as individuals and on behalf of all others similarly situated, against Magic Mountain asserting claims for: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wage; (5) waiting time penalties; (6) record keeping violations; (7) wage statement penalties; (8) suitable seating; (9) unfair business practices; and (10) penalties under the Private Attorneys General Act (PAGA).

---

1 All further undesignated statutory references are to the Code of Civil Procedure.

On June 11, 2013, the court issued its Initial Status Conference Order. The order required the parties to meet and confer to discuss the central legal and factual issues in the case, negotiate a case management plan, and submit a joint initial status conference class action response statement before the initial status conference. The order stayed the proceedings in their entirety, and precluded Magic Mountain defendants from filing responsive pleadings until the initial status conference, scheduled for August 23, 2013. The parties were permitted, however, to informally exchange documents to facilitate their initial evaluation of the case. The parties attended the initial status conference on August 23, 2013.

On October 2, 2013, plaintiffs propounded initial written discovery, initiating a lengthy and extensive discovery process, including motion practice. Plaintiffs deposed six "persons most knowledgeable" between 2014 and 2016. *Belaire-West*[2] notices were sent to maintenance department employees on or about January 21, 2015, and to a 20 percent sampling of seasonal employees on or about April 25, 2016. Also, in 2016, Magic Mountain produced a sampling of time card records and payroll data.

On November 1, 2016, plaintiffs filed their motion for class certification on behalf of a proposed class of over 21,000 current and former seasonal employees and over 167 current and former maintenance employees.[3] The court set a briefing schedule for the opposition and reply, with a hearing date of April 25, 2017.

2      *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554. In wage and hour class actions, a *Belaire-West* notice is sent to putative class members to inform them that their contact information will be disclosed unless they timely object to such disclosure in writing. (*Id*. at pp. 561-562.)

3      The court originally set an earlier deadline for plaintiffs to move for class certification, but plaintiffs requested to continue that deadline. Magic Mountain agreed to stipulate to the

3

On December 29, 2016, plaintiffs moved for leave to amend their class certification motion. At the hearing on the motion, the court warned plaintiffs about the five-year rule: "I am very concerned about the clock running on this case. And fairly, it's not three and a half years. It's three years and ten months. And as it is, we will get this certification hearing in right at about the four-year birthday. And you will have a single year in which for you to obtain all the remaining expert discovery." Plaintiffs' counsel responded that plaintiffs understood "that concern" and they "are mindful of the time" it takes to prepare for trial, but "very frequently, cases that are certified reach a settlement that is beneficial." The court denied plaintiffs' motion to amend their certification motion because it violated the parties' earlier stipulation. It did, however, extend the briefing schedule for the class certification motion. Based on the court-ordered schedule, Magic Mountain filed its opposition to the class certification motion on March 28, 2017.

After Magic Mountain filed its opposition, plaintiffs sought additional time to take depositions and obtained an extension of their deadline to file their reply from May 27, 2017 to August 31, 2017. When plaintiffs sought an additional extension at an August 4, 2017 hearing, the court again warned plaintiffs about the five-year rule: "[Y]ou're going to lose your case to the five-year rule while you try to perfect your class. Do I find it impossible to go to trial? No, I don't. [¶] So let's not borrow [sic] my stepping in to save you. I'm trying very hard not to have to save you by giving you a hearing date sometime in this lifetime." The court granted plaintiffs the extension they sought and the discovery of additional electronic records, but denied their request for paper

extension, on the condition that "Plaintiffs' motion for class certification will include all causes of action and legal and/or factual theories upon which Plaintiffs will seek certification in this action, and Plaintiffs agree they will not seek certification on any basis that is not set forth in the motion at a later date."

4

records because producing those records would have caused further delay.[4]

On October 4, 2017, the court heard the class certification motion. The court denied certification on the majority of plaintiffs' claims. It gave plaintiffs the opportunity, however, to submit a trial plan demonstrating manageability as to three of the proposed subclasses.

On January 24, 2018, the court considered plaintiffs' proposed trial plan. In response to plaintiffs' request for more briefing on class certification, the court responded: "[A]t some point, my goodness, we need to decide this. We need to call this. Honestly, this case was filed in April of 2013. . . . So in April [2018] this case dies. And you want additional briefing on certification?" On January 25, 2018, the court ultimately denied plaintiffs' motion for class certification in its entirety.

On March 23, 2018, plaintiffs filed a notice of appeal from the order denying class certification, purporting to appeal under the "death knell" doctrine.[5] On May 17, 2018, 55 days after plaintiffs filed the appeal, a different panel of this court dismissed the appeal on the ground the appeal was taken from a non-appealable order (because the death knell doctrine does not

_____

4      The court noted: "These fights should have happened in 2014. They really should have. They didn't. I [don't] know why they didn't. I wasn't here. But they're happening in 2017 and that's a huge problem."

5      Under California law, "an order denying a motion to certify all class claims leaving only the named plaintiff's individual claims in the trial court is an appealable order under the "'death knell'" doctrine. [Citations.]" (*Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 308 (*Munoz*).) "The rationale of permitting appeal of what would otherwise be an intermediate order is that absent immediate review, the plaintiff would have no financial incentive to pursue his or her case to final judgment just to preserve the ability to appeal the denial of the plaintiff's class certification motion. [Citation.]" (*Ibid.*)

apply where PAGA claims remain in the trial court), and denied plaintiffs' request to treat their appeal as a writ petition. A little over a month later, on June 26, 2018, plaintiffs requested the trial court advance the date of the August 13, 2018 status conference in light of the dismissal of their appeal. The trial court responded that the parties could confer to find a new date. This court issued a remittitur on July 19, 2018.

On August 6, 2018, the trial court issued an order requesting supplemental briefing on the parties' PAGA discovery dispute. The trial court continued the August 13, 2018 status conference to September 26, 2018 so it could consider the supplemental briefing. The order stated: "The matter is stayed during the pendency of this supplemental briefing."

On September 4, 2018, Magic Mountain moved to strike plaintiffs' PAGA claims. The parties later stipulated to a continuance of the September 26, 2018 hearing to October 4, 2018. On September 28, 2018, Judge Lisa Hart Cole (who filled in for Judge Jones while she sat pro tem at the Court of Appeal until her return on November 9, 2018), issued a minute order interpreting Judge Jones's August 6, 2018 order: "This matter is stayed until the Plaintiffs Request for Production (Set Four) and Special Interrogatories (Set Two), AND Defendants' Motion to Strike and/or Dismiss Plaintiffs' Representative allegations have been heard and ruled upon by the court. The stay is continuous from 8/6/18 and for all purposes, but for briefing and hearing on the Plaintiffs' discovery motions and Defendants' motion to strike. This clarifying order is nunc pro tunc to 8/6/18."

On October 2, 2018, Judge Cole set a hearing on plaintiffs' PAGA discovery motions and Magic Mountain's motion to strike for November 9, 2018. At the November 9, 2018 hearing, the parties again discussed the five-year issue. Plaintiffs' counsel expressed a belief that the five years would run on November 16, 2018, so Judge Jones set trial on the PAGA claims for that date. But the court remained uncertain regarding the five-year

6

calculation, and thus requested briefing on the issue. Specifically, the court stated it required further discussion on whether the case had been stayed during the pendency of the appeal: "And I have grave concern that when people assert the death knell rule, with the full intention of proceeding with remaining claims in a trial court, that it's an improvident use of the death knell rule. The notice of appeal is not a notice of appeal. It is, in fact, a writ. And that period should not be excluded from the five-year rule, and that needs to be discussed as well."

On November 13, 2018, plaintiffs filed an ex parte application for an order determining the date by which the case must be brought to trial. The same day, Magic Mountain filed a motion in limine to dismiss the case for failure to bring it to trial within five years.

On November 14, 2018, the court granted plaintiffs' ex parte application. It held that, with the exception of the initial stay from April 9, 2013 until August 23, 2013, no other time periods were excludable from the five-year calculation. It reasoned that the action was not stayed during the pendency of plaintiffs' appeal because an appeal from a non-appealable order does not automatically stay the trial court proceedings, and there were no other time periods when it was impossible or impracticable to bring the action to trial. It therefore concluded the five-year clock expired on August 23, 2018. Because the case was not brought to trial before that date, "[n]or did plaintiffs request that a trial be set before that date," the court entered judgment in favor of Magic Mountain on November 16, 2018. Plaintiffs timely appealed.

## DISCUSSION

## I. The Dismissal Under Section 583.310

Plaintiffs contend the trial court erred by dismissing their action for failure to bring it to trial within five years. They argue

7

the trial court should have excluded from the five-year period: (i) the 118 days during which their appeal was pending because the appeal effected an automatic stay and, alternatively, prosecution of the case was impossible or impracticable during that period; and/or (ii) the 176 days from May 17, 2018 to November 9, 2018 when Judge Jones was sitting pro tem at the Court of Appeal, various stays were purportedly in place, and it was impossible or impracticable to bring the action to trial. For the reasons discussed below, we disagree.

## A. Legal Principles and Standard of Review

Section 583.310 requires that "[a]n action shall be brought to trial within five years after the action is commenced against the defendant." "This requirement is mandatory and not subject to extension, excuse or exception except as expressly provided by statute. [Citation.]" (*Rel v. Pacific Bell Mobile Services* (2019) 33 Cal.App.5th 882, 889 (*Rel*); see also § 583.360, subd. (b).) "'Thus, unless some specified exception applies, a trial court has a mandatory duty to dismiss an action and a defendant has an absolute right to obtain an order of dismissal, once five years has elapsed from the date the action was commenced.' [Citation.]" (*Cole v. Hammond* (2019) 37 Cal.App.5th 912, 921.) The three statutory exceptions that toll the five-year limit are periods when: "(a) [t]he jurisdiction of the court to try the action was suspended[;] [¶] (b) [p]rosecution or trial of the action was stayed or enjoined[;][and] [¶] (c) [b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340, subds. (a)-(c).)

"'The purpose of the five-year dismissal statute is to prevent the prosecution of stale claims where defendants could be prejudiced by loss of evidence and diminished memories of witnesses. [Citation.] The statute also protects defendants from the annoyance of having unmeritorious claims against them

8

unresolved for unreasonable periods of time.' [Citation.]" (*Rel, supra*, 33 Cal.App.5th at pp. 888-889.)

We review the legal question of whether plaintiffs' appeal automatically stayed proceedings in the trial court de novo. (See, e.g., *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1092 (*Gaines*).) The trial court's determination not to exclude periods during which plaintiffs contend it was impossible, impracticable or futile to bring the action to trial within the meaning of section 583.340, subdivision (c), however, is reviewed for an abuse of discretion. (*Martinez v. Landry's Restaurants, Inc.* (2018) 26 Cal.App.5th 783, 794.)

## B. Plaintiffs' Defective Appeal Did Not Automatically Stay the Action

As discussed above, on March 23, 2018, plaintiffs filed a notice of appeal of the trial court's order denying class certification, purportedly relying on the "death knell" doctrine. A different panel of this court dismissed plaintiffs' appeal on May 17, 2018 (55 days later), concluding the death knell doctrine did not apply where, as here, plaintiffs' representative PAGA claims remained in the trial court. This court issued a remittitur on July 19, 2018 (118 days after plaintiffs' notice of appeal). Plaintiffs contend during that 118-day period, all trial court proceedings were stayed as a matter of law. We disagree.

Section 916, subdivision (a) provides that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action not affected by the judgment or order." The automatic stay, however, arises only "upon a 'duly perfected' appeal. [Citations.]" (*Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 146 (*Hearn Pacific*).) It

9

therefore follows that an "invalid" appeal does "not affect the trial court's jurisdiction to proceed. [Citations.]" (*Id.* at pp. 146-147; see also *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666 (*Pazderka*) [If an "order is nonappealable, the appeal was never perfected and the trial court retained jurisdiction . . . ."].)

Here, plaintiffs' appeal was invalid because the death knell doctrine does not apply when, as here, representative claims under PAGA are being pursued in the trial court. (*Munoz, supra,* 238 Cal.App.4th at p. 311 ["Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification. Denial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment . . . ."].) Plaintiffs' appeal, therefore, was from an interlocutory, nonappealable order.

Plaintiffs' attempt to distinguish *Hearn Pacific* and *Pazderka* is unavailing. In their reply brief, plaintiffs argue their appeal was not invalid on its face like the appeals in *Hearn Pacific* (untimely appeal) and *Pazderka* (judgment pursuant to section 998 nonappealable), but rather was dependent on resolution of disputed facts. It follows, according to plaintiffs, that the appeal was "duly perfected." For this point, plaintiffs rely solely on *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401 (*Hopkins*). In *Hopkins*, the Court of Appeal recognized a "sizable body of precedent holds that an appeal from a *nonappealable order* will not divest the trial court of jurisdiction. [Citations.]" (*Hopkins, supra*, 200 Cal.App.4th at p. 1409, fn.4.) It went on to state: "We question whether the same rule [that an appeal from a nonappealable order will not divest the trial court of jurisdiction] can or should apply where, as here, the lateness of

10

the appeal depends on facts that are at least theoretically disputable, such as recitals in a declaration of service. Arguably the appellate court acquires exclusive jurisdiction in such a case to determine whether the appeal is in fact untimely, and until it has made that determination the trial court is without power in the matter." (*Ibid.*)

*Hopkins* questioned, but did not answer, whether the Court of Appeal acquires exclusive jurisdiction over an action when the validity of the appeal depends on disputed facts. Even assuming the answer should be "yes," however, the facts here are not disputable. It is undisputed that a representative PAGA action remained in the trial court on behalf of thousands of employees. It is also undisputed that "[g]enerally speaking, the civil penalties available under the PAGA are $100 'for each aggrieved employee per pay period for the initial violation and [$200] for each aggrieved employee per pay period for each subsequent violation.' (Lab. Code, § 2699, subd. (f)(2).)" (*Munoz, supra*, 238 Cal.App.4th at pp. 310-311.) Thus, based on the undisputed facts, plaintiffs' recovery "could be quite substantial," precluding application of the death knell doctrine. (*Id.* at p. 311.)

Alternatively, plaintiffs contend even if the action was not automatically stayed under section 916, subdivision (a), it was impossible or impracticable (§ 583.340, subd. (c)) for them to move their case toward trial while their appeal was pending. The crux of their argument is because the trial court supposedly "*believed and acted* as if a stay were in effect," it was impossible to move their case toward trial during this period. Again, we disagree.

"The burden is on plaintiff to first establish in the trial court, by clear and convincing proof, the existence of either impossibility, impracticability, or futility of bringing the matter to trial within five years." (*Hoffman v. Cal.* (1985) 171 Cal.App.3d 1100, 1108.) "To avoid dismissal under the section 583.340, subdivision (c) exception, a plaintiff must prove (1) a

11

circumstance establishing impossibility, impracticability, or futility, (2) a causal connection between the circumstance and the failure to move the case to trial within the five-year period, and (3) that she was reasonably diligent in prosecuting her case at all stages in the proceedings. [Citations.]" (*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 323 (*Tanguilig*).)

The trial court admittedly was uncertain whether it had jurisdiction while plaintiffs' appeal was pending. At the April 6, 2018 status conference, the court stated: "I think I'm deprived of jurisdiction. I mean, it's weird. Because by filing a notice of appeal, even though they're going to now re-denominate it as a writ and I wouldn't have lost jurisdiction – by denominating it an appeal, I think I've lost jurisdiction. I could be wrong about that." Plaintiffs' counsel responded that it was his "understanding [ ] that it actually doesn't deprive the trial court of jurisdiction because there's not an automatic stay. So the trial court would have to impose a stay, which I believe it has the discretion to do." Plaintiffs' counsel then asked that the court impose a stay on all the proceedings out of "an abundance of caution." The court responded: "I don't have jurisdiction. I can't do nothing [sic]. That's [the] funny thing. I've got no power. That's the weird land I'm in. If I don't have any jurisdiction, I can't do anything. You could ask the Court of Appeal, who has all the jurisdiction in the world right now, because [a] Notice of Appeal has been filed, to, in an abundance of caution, stay the proceeding in the trial court."

Contrary to plaintiffs' contentions, however, the court never made an express finding of impossibility or impracticability. Instead, the court concluded: "There's an outstanding question in my mind as to whether the clock is running as we speak . . . So what I propose we do is we continue the status conference until August the 13th. And while I'm not entirely clear, if I need to, on August the 13th, if we still haven't heard from the Court of Appeal, I will make a find[ing] that it is impossible or

impracticable to bring the case to trial within the five-year period, pending a determination by the Court of Appeal that this is in fact a class action."[6]

In any event, even if plaintiffs could establish impossibility during the pendency of their appeal, they failed to demonstrate they were reasonably diligent in prosecuting the case at all stages of the proceedings. (*Tanguilig, supra,* 22 Cal.App.5th at p. 323.) Plaintiffs claim "there is no dispute about plaintiffs' diligence" and therefore, failed to address this "critical factor" in their opening brief. (*Gaines, supra*, 62 Cal.4th at p. 1100.) But the trial court expressly found plaintiffs did not meet their burden to demonstrate reasonable diligence: "There were a variety of avenues that the plaintiffs could have pursued to efficiently complete this case within the statutory period, including investigating and developing an efficient litigation strategy in light of the real world constraints presented by the employer's business records. Further, over the course of this litigation, months have elapsed without any significant activity by

---

6      Even if we agreed with plaintiffs that it was impossible or impracticable to move their case to trial while the court believed it lacked jurisdiction, the trial court certainly knew it had jurisdiction when the appeal was dismissed – only 55 days after the notice of appeal was filed. In their ex parte papers submitted in the trial court, plaintiffs apparently acknowledge this point by urging the trial court to exclude the 55 days from March 23, 2018 (date of their notice of appeal) through May 17, 2018 (date their appeal was dismissed). Although remittitur was not issued until 118 days after the notice of appeal, that fact has no bearing on the trial court's belief regarding whether it had jurisdiction during the pendency of the appeal. The trial court was never, in fact, divested of jurisdiction. (*Pazderka, supra,* 62 Cal.App.4th at p. 666 [If an "order is nonappealable, the appeal was never perfected and the trial court retained jurisdiction . . . ."].) Plaintiffs concede, however, that exclusion of an additional 55 days from the five-year calculation is insufficient to satisfy the five-year rule.

[p]laintiffs. Despite receiving proposed class member contact information over two years ago, deposing the PMKs and receiving an agreed-upon sampling of employee pay and time records, plaintiffs fail to explain why they were unable to bring their PAGA and individual labor law claims to trial by now. These facts demonstrate plaintiffs' lack of reasonable diligence in prosecuting their case." We discern no abuse of discretion. (See, e.g., *Warner Bros. Entertainment Inc. v. Superior Court* (2018) 29 Cal.App.5th 243, 268 ["[W]e cannot imply a trial court finding of reasonable diligence when the trial court expressly found to the contrary[ ]"]; see also *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731 (*Bruns*) [noting the question of impossibility and impracticability is "best resolved by the trial court, which 'is in the most advantageous position to evaluate these diverse factual matters in the first instance.' [Citation.]"].)

Accordingly, we conclude the trial court did not err by refusing to exclude the time period during which plaintiffs' appeal from a nonappealable order was pending.

### C. The Trial Court Did Not Abuse Its Discretion By Declining to Exclude Various Time Periods Following the Conclusion of Plaintiffs' Defective Appeal

Alternatively, plaintiffs contend the five-year period was tolled for several overlapping date ranges from the date of the dismissal of their appeal (May 17, 2018) to the date of the dismissal of their case (November 16, 2018). We frankly find it difficult to ascertain from plaintiffs' briefs each precise time period for which plaintiffs seek tolling, and their purported justification for excluding each time period. At oral argument, however, plaintiffs' counsel clarified that plaintiffs contend the following two time periods should have been excluded from the five-year calculation: (1) the 122 days between the April 6, 2018

14

status conference and the August 6, 2018 status conference; and (2) the 95 days between the August 6, 2018 status conference and November 9, 2018. Plaintiffs claim the case was either stayed during portions of these periods and/or it was impossible or impracticable for plaintiffs to prosecute the case. We conclude plaintiffs forfeited their argument with respect to tolling either of these specific time periods by failing to identify them in the trial court, and even assuming their argument has not been forfeited, the trial court did not err by declining to exclude any time period after plaintiffs' appeal was dismissed.

We first address forfeiture. Plaintiffs argued below that the entire period between the January 24, 2018 class certification hearing (when the court purportedly stated that discovery had been exceptionally difficult, and that fact "was sufficient to support a finding of impracticability/impossibility")[7] to March 2019 (the next available trial date at the time of the January 24, 2018 hearing) should be excluded from the five-year calculation. Plaintiffs did not, however, identify either of the specific time periods listed above for which they now seek tolling on appeal. We therefore conclude plaintiffs' claim to these additional tolling periods has been forfeited. (See, e.g., *Baugh v. Garl* (2006) 137 Cal.App.4th 737, 746 ["Points not raised in the trial court may not be raised for the first time on appeal."]; see also *Tanguilig,*

---

7      The record indicates the court did *not* make an express finding of impossibility or impracticability at the January 24, 2018 class certification hearing. The trial court initially stated: ". . . I'll set this for a hearing on whether or not it was impossible or impractical to bring this case to trial and try to come up with some plan if the defendants won't stipulate to have some further plan." The court went on to state, after noting "[i]t was an incredibly difficult case for the basic fundamental practices to actually be able to be discovered," that "[i]f I had to make a finding [of impossibility or impracticability], it probably wouldn't be too hard for me to make one. . . . [¶] So that's what we need to discuss." The court then set a status conference for April 6, 2018.

*supra*, 22 Cal.App.5th at p. 330 [holding a plaintiff challenging dismissal under the five-year rule cannot raise a new tolling period on appeal].)

Nonetheless, we reject plaintiffs' argument on the merits. First, plaintiffs failed to demonstrate a complete stay of proceedings during either of the purported tolling periods listed above. (See *Bruns, supra,* 51 Cal.4th at p. 730 [". . . subdivision (b) of section 583.340 governs only complete stays that are 'used to stop the prosecution of the action altogether.' [Citation.]"].) Contrary to plaintiffs' contention, the trial court did not order a complete stay on August 6, 2018. Rather, the court entered a partial stay to allow the parties to provide supplemental briefing on plaintiffs' discovery motions. The court's August 6, 2018 order provided dates for supplemental briefing (plaintiffs' brief due on August 21, 2018 and Magic Mountain's brief due on September 4, 2018). The order further stated: "The matter is stayed during the pendency of this supplemental briefing." Partial stays that permit proceedings related to discovery to continue do not "stop the prosecution of the action altogether," and thus do not constitute a stay for purposes of section 583.340, subdivision (b). (*Gaines, supra*, 62 Cal.4th at p. 1094.) As the trial court stated, "plaintiffs were free during this period to conduct any other aspect of their case, including working with expert witnesses on a trial plan necessary to establish the manageability of their PAGA representative action."

In support of their argument that Judge Jones's August 6, 2018 order constituted a complete stay of the proceedings, plaintiffs rely on an order issued by Judge Cole on September 28, 2018. As noted above, in response to plaintiffs' request for clarification of the stay issued on August 6, 2018, Judge Cole issued a minute order nunc pro tunc stating in part: "The stay is continuous from [August 6, 2018] and for all purposes, but for briefing and hearing on the [p]laintiffs' discovery motions and

16

[d]efendants' motion to strike." Thus, like the August 6 order, the September 28 order still allowed for the case to progress. (See *Gaines, supra*, 62 Cal.4th at p. 1094 ["the label used in the trial court's order is not dispositive. [Citation.]"].) We conclude the August 6 order did not constitute a stay of the prosecution of the action within the meaning of section 583.340, subdivision (b).

Second, plaintiffs contend that even if a complete stay was not in effect, the court "found" it was "impossible and impracticable" to move the case forward from May 17, 2018 to "a couple weeks" after November 9, 2018. Based on those purported findings, plaintiffs argue it was "an abuse of discretion for the trial court *not* to have excluded those prior time periods[.]" We are unpersuaded.

Plaintiffs rely on the following excerpt from the transcript of the November 9, 2018 hearing: "So from May 17th, 2018 – until – and I'm going to make it – we'll agree on a date about a couple of weeks from now – I will find that during this period of time, it would have been impossible and impracticable. And, therefore, I'm staying it." But the following sentence states: "This is what I want you to brief, and this is what I want a hearing on." As the court further discussed the five-year rule issue with counsel, the court stated: "I'm not going to start a trial that can't be tried. It's going to be – but I have to conclude that it was impossible or impracticable. [¶] And, as I sit here today, I'm not persuaded of that. That's what I'm sharing with you." Ultimately, the court ruled it was not making any findings because it needed briefing: "As of today, at a minimum – let me make this really clear – the case is active. We're having motions. [¶] Both parties are free to argue whatever they'd like to argue, with regard to anything I might have said previously that might affect this computation, but I do not want there to be any confusion. [¶] And I have no intention today of doing anything with regards to impossibility or impracticability. As far as I'm concerned, at this point, we are full steam ahead. [¶] And I want to set a briefing schedule, and I also

17

want to give you a prophylactic trial [date], because I don't want this to be lost." On this record, we conclude plaintiffs' cherry picked statements from the November 9 hearing regarding impossibility and impracticability do not constitute irreversible "findings," as plaintiffs suggest. The trial court properly requested briefing on the subject, and issued a ten-page written ruling after reviewing both parties' arguments.

Moreover, as discussed above, the trial court did not abuse its discretion by concluding plaintiffs were not reasonably diligent. In their reply brief, plaintiffs detail the "substantial record" of this "heavily litigated" case, including the names and dates of the depositions of 137 witnesses. The trial court acknowledged that the "discovery in this case has been extensive and thorough." That fact alone, however, is insufficient to demonstrate reasonable diligence. (See *Wilcox v. Ford* (1988) 206 Cal.App.3d 1170, 1175 ["The exercise of reasonable diligence requires a plaintiff to 'keep track of the pertinent dates which are crucial to maintenance of his lawsuit, and to see that the action is brought to trial within the five-year period.' [Citations.] The failure to monitor these dates does not constitute a cause beyond the plaintiff's control so as to trigger application of the impossible, impracticable or futile exceptions. [Citations.]"].)[8]

## II. The Denial of Plaintiffs' Class Certification Motion

In addition to their attack on the five-year dismissal, plaintiffs appeal from Judge Jones's order denying their motion for class certification. To obtain reversal, however, "an appellant

---

[8] Because we conclude the trial court did not err by dismissing plaintiffs' action for failure to bring it to trial within five years, we need not address Magic Mountain's alternative argument that the trial court should not have excluded the initial case management stay from April 9, 2013 to August 23, 2013 in the five-year calculation.

has the burden to show not only that the trial court erred but also that the error was prejudicial. [Citations.]" (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347-348.) Here, even if we were to agree the motion for class certification was erroneously denied, plaintiffs' action would have been properly dismissed under section 583.310 for the reasons discussed above. Accordingly, we need not address the merits of this aspect of plaintiffs' appeal. (See *Tanguilig, supra*, 22 Cal.App.5th 313, 334 [where the trial court properly dismissed the action under section 583.310, the Court of Appeal declined to address the trial court's ruling on demurrer because "[i]f a suit would have failed or been dismissed even in the absence of an asserted error, the error is plainly not prejudicial to the appellant and thus reversal is not warranted. [Citations.]"].)

## DISPOSITION

The judgment is affirmed. Magic Mountain is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


WILLHITE, J.