Filed 2/11/26  FHDI v. Grantham CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FHDI, LLC,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>GREGORY GRANTHAM,<br><br>  Defendant and Appellant. | G064623<br><br>(Super. Ct. No. 30-2013-00662581)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David J. Hesseltine, Judge. Affirmed in part, reversed in part, and remanded.

Mario Ashraf Iskander for Defendant and Appellant.

Rutan & Tucker, Ira G. Rivin and Gerard M. Mooney for Plaintiff and Respondent.

\* \* \*

The underlying case is about a loan between plaintiff and respondent FHDI, LLC, which was the lender, and defendant and appellant Gregory Grantham, who was one of numerous individuals and entities who were the borrowers. FHDI contended Grantham and other defendants committed fraud in connection with the loan.

This case was originally filed in 2014. Grantham's default was entered in 2024. Shortly before judgment was entered against him, Grantham appeared after a lengthy absence to argue the case should be dismissed under the "five-year rule" set forth in Code of Civil Procedure section 583.310.[1] As we shall discuss below, we conclude the trial court correctly determined the five-year rule did not apply due to lengthy stays in the case that were not the fault of FHDI.

Grantham raises several other issues, but only one of them has merit. He contends the amount of the judgment was incorrectly calculated because he was given a monetary credit based on a foreclosure sale rather than the fair market value of the property. This was error. We remand the case for the limited purpose of determining the fair market value of the property and amending the judgment to reflect proper credit for this amount.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case has a lengthy history. In this section, we endeavor to give an overview of the facts and procedural history without wandering too far into the weeds. We have carefully read the briefs and thoroughly reviewed the record, and although we are omitting portions of this case's history, we

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

are nonetheless aware of them and the full context in which this appeal presents itself.

*A. Relevant People and Entities, and the Loan*

In 2012, Kim Davis, an attorney, was working with Grantham[2] and Mervyn Phelan. Davis, who was friends Henry T. Nicholas, III (Nicholas), approached Nicholas about investing with Grantham and Phelan. General counsel for Nicholas's companies, Emilio Gonzalez, spoke with Phelan and Grantham about the potential for Nicholas to invest in a large development project in Fort Howard, Maryland. Gonazlez was told the project would provide residential, commercial, and medical facilities for veterans.

In October 2012, after negotiations and due diligence, Nicholas, through FHDI, a single purpose entity, agreed to loan $6.44 million to American Life Capital, LLC (ALC). ALC was controlled by Phelan and Grantham. The parties executed, among other documents, a loan agreement and a promissory note. The terms of the note required ALC to repay the principal and any unpaid interest within one year, subject to an option to extend the maturity date by six months if there was no existing default. The loan was guaranteed by several ALC affiliates, including Workmen's Development Group (WDG) and SLF Investment Trust (SLF). (Collectively, Phelan, Grantham, ALC, WDG, and SLF are referred to herein as the ALC defendants.) Grantham and Phelan were cotrustees of SLF.

SLF executed a separate pledge agreement in favor of FHDI. SLF pledged its entire membership interest in seven limited liability companies (the pledged LLCs) as collateral for the SLF guaranty. According to the

---

[2] Grantham is, or was, an attorney, although his license status is unclear.

various documents, the seven companies were real estate and development companies, each of which owned unimproved land valued between $1.5 and $6.5 million. FHDI recorded a memorandum of pledge agreement in each jurisdiction where the property was located and UCC-1 financing statements. On October 29, FHDI began disbursing loan funds to ALC.

*B. Problems Arise*

Shortly after the loan documents were executed, FHDI began to learn of numerous issues. ALC's borrower, the Fort Howard development entity, complained ALC had not fully funded its loan. A few weeks later, outside counsel, Emilio Gonzalez, received correspondence from an attorney claiming to represent two of the pledged LLCs. Phelan and Grantham had represented those two entities owned 92 acres of land in San Diego and San Bernardino counties, with a value of $7.3 million. According to the attorney, neither ALC, SLF, nor WDG had an ownership in either LLC. Gonzalez learned that Phelan and Grantham had transferred their interests in those two LLCs to third parties in April 2012, six months before the loan agreement between ALC and FHDI. (Because the properties continued to be owned by the LLCs, title reports obtained during due diligence did not reveal the transfers.) From FHDI's perspective, ALC was in default on the loan less than a month after the papers had been signed, and had no right to any further proceeds.

Other issues began to reveal themselves. The ALC defendants had represented in the various loan documents that no lawsuits or other actions were pending against them, the pledged LLCs, or the properties owned by the pledged LLCs. Grantham also made the same representation during the due diligence process. But at the time the loan was made, three undisclosed, fraud-based lawsuits existed against ALC (sued under its former

4

name, Preferred Senior Holding), WDG, Grantham, and/or Phelan in Maryland. None of these lawsuits were disclosed at the time of the loan. In 2014, Phelan and Grantham pleaded guilty to federal mail and wire fraud on transactions relating to one or more of the Maryland lawsuits. Each received a five-year prison term.

Additionally, FHDI claimed that Phelan and Grantham misled FHDI about how a portion of the loan funds would be used. Prior to funding, they persuaded FHDI to include $214,000 in the initial loan draw to remove a deed of trust on a property owned by one of the pledged LLCs. FHDI alleged they concealed a prior commitment from the developer for a loan to pay off the same deed of trust, thereby receiving $428,000 to pay off a $214,000 obligation.

After learning about the prior transfers of two of the pledged LLCs, FHDI notified Phelan and Grantham that these actions, if true, would constitute a breach. Efforts to find a solution were unsuccessful.

C. *FHDI Sues the ALC Defendants*

On July 15, 2013, FHDI filed the instant action, alleging various claims for fraud and breach of contract. FHDI immediately sought and obtained a preliminary injunction preventing the ALC defendants from transferring or encumbering the collateral. FHDI separately initiated foreclosure proceedings on the pledged collateral. There was a great deal of activity related to the foreclosure proceedings and allegations of fraudulent transfers of the collateral by the ALC defendants. We need not detail that activity here.

D. *Prison, COVID-19, and Further Litigation*

As noted above, in 2015, Phelan and Grantham began serving five-year prison sentences. In August 2016, the trial court stayed the

5

proceedings until Grantham and Phelan were released from prison, which occurred in May 2018 and July 2019, respectively.

Following Grantham and Phelan's release from prison, in October 2019, the trial court conducted a status conference. None of the defendants appeared, and the trial court scheduled an order to show cause (OSC) hearing for December 17. Notice of the hearing was served to Grantham at his prison address. He did not update his address with the court after his release.

In November, FHDI allegedly discovered that Phelan had again attempted to transfer one of the pledged LLCs to a different entity. On December 3, FHDI filed an ex parte application to add claims against the entity involved in this transfer and sought a temporary restraining order and an OSC regarding a preliminary injunction. The trial court granted all three requests. The court subsequently granted the preliminary injunction.

On December 17, the court struck Grantham's answer due to his failure to appear, and FHDI filed and served notice of that order. Grantham did not appear again in the case until 2023.

Proceedings without Grantham continued. In January 2020, the court scheduled a status conference for February 3, which it continued to March 23. On March 19, the court vacated the status conference. This was shortly before emergency rules were implemented due to the COVID-19 pandemic.

From July 2020 onward, there were numerous delays, motions by defendants other than Grantham (the remaining ALC defendants), court attempts to set trial dates, and requests by the remaining ALC defendants to continue. A trial date was finally set for May 8, 2023. FHDI filed its pretrial paperwork. On May 8, the trial was continued by the court and then continued again on May 22.

6

On July 10, the next scheduled trial date, the parties announced they had reached a tentative settlement, and the court continued the trial date three times through August 14 to give the parties time to finalize their agreement.

*E. Grantham Returns*

Meanwhile, on May 5, 2023, Grantham reappeared in the case, having filed nothing since 2018. On May 9, without leave of court, he refiled the same answer the court had stricken as a sanction in December 2019. The answer was later stricken.

On May 25, Grantham filed an ex parte application to dismiss the case under Code of Civil Procedure section 583.310. The court denied the ex parte but set a hearing. The trial court continued the hearing on the motion three times.

On August 14, meanwhile, FHDI and the remaining ALC defendants, plus two other parties involved in the alleged fraudulent transfers (the settling defendants), filed a stipulation for entry of judgment. Grantham filed an objection, to which the other parties responded.

On August 21, the court took Grantham's motion to dismiss pursuant to the five-year rule off calendar. The following day, the trial court overruled Grantham's objection to the stipulated judgment, concluding Grantham had failed to provide evidence or authority to support it. The trial court granted the stipulated judgment against the settling defendants on the same date.

*F. Default Judgment Against Grantham*

On September 1, 2023, FHDI filed a request for entry of default against Grantham. The court entered it as effective that day. Grantham filed a motion to set aside the default, which the court heard and denied on

7

January 29, 2024. The court acknowledged, but made no ruling on, the five-year rule.

In the same order, the court scheduled an OSC regarding dismissal/default prove-up for March 2024. The court directed FHDI to address the five-year rule in its application for default judgment.

The court found deficiencies in the initial default judgment papers and denied the application without prejudice, but none of these issues related to the five-year rule. FHDI supplemented its default papers to include additional evidence and revised damages calculations. The trial court granted FHDI's application as an amendment to the existing judgment. The judgment granted FHDI $2,836,692.28, plus prejudgment interest in the amount of $2,464,538.78, for a money judgment of $5,301,231.06. Grantham now appeals.

## DISCUSSION

### I.

#### THE FIVE-YEAR STATUTE

Grantham's principal argument in this appeal is that the case should have been dismissed under the five-year rule set forth in section 583.10. According to him, FHDI was not entitled to *any* days of discretionary tolling.

*A. Statutory Principles and Standard of Review*

"An action shall be brought to trial within five years after the action is commenced against the defendant." (§ 583.310.) "An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed . . . ." (§ 583.360, subd. (a).)

8

This dismissal requirement is "not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.360, subd. (b).) "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340.)

"[T]he policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter." (§ 583.130.) Accordingly, the tolling provisions of "[s]ection 583.340 [are] construed liberally, consistent with the policy favoring trial on the merits." (*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 323.)

"When applying the tolling exceptions in section 583.340, subdivision (c) . . . , a trial court 'must consider "'all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.'"' [Citation.] "'The question of impossibility, impracticability, or futility is best resolved by the trial court, which 'is in the most advantageous position to evaluate these diverse factual matters in the first instance.' [Citation.] The plaintiff bears the burden of proving that the circumstances warrant application of the . . . exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has

9

proved that the trial court abused its discretion. [Citations.]" [Citation.] Under that standard, "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."'" (*Seto v. Szeto* (2022) 86 Cal.App.5th 76, 86 (*Seto).)*[3]

Because this case arises in the context of a default, its procedural posture is somewhat atypical. As we noted above, the trial court did not expressly rule on Grantham's motion to dismiss regarding the five-year rule. Grantham argues that we should simply remand the case to the trial court for a full hearing on this issue, and that it is "grossly unfair" for him to be required to demonstrate an abuse of discretion. First, he ignores the fact that the procedural posture of this case—a default judgment—was due to his own lack of diligence, which led to the court striking his answer. Second, he offers no legal support whatsoever for this contention. Finally, given that FHDI had the burden of establishing the five-year rule does not or should not apply below (*Lauriton v. Carnation Co.* (1989) 215 Cal.App.3d 161, 165), we find no legal principle that requires remand rather than the application of the ordinary rules on appeal.

The record supports the conclusion that the court was aware of its obligation to consider the rule, which it indicated by advising FHDI to address the issue in its default prove-up declaration. Under the doctrine of

---

[3] While Grantham suggests we should review this issue de novo, he is incorrect. The cases he cites in support state that the proper interpretation of statutes—a question of law—is reviewed de novo. (See *Tanguilig v. Neiman Marcus Group, Inc., supra,* 22 Cal.App.5th at p. 324; *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 328.) Further, this is not a case of applying the law to undisputed facts. (*Ibid.*)

implied findings, if the record does not state otherwise, we presume the trial court considered all of the relevant factors and made all findings necessary to support its decision. (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1320.) Implied findings must be supported by substantial evidence. (*Ibid.*)

*B. Calculation of the Five-Year Rule in Multidefendant Cases*

Citing a case decided before the current statute was adopted, *Brunzell Construction Co. v. Wagner* (1970) 2 Cal.3d 545 (*Brunzell*), Grantham contends we must decide the application of the five-year rule separately for each defendant. What Grantham ignores, however, is that *Brunzell* goes on to state that applying the statute's tolling provisions "involves a judgment of practical realities, and artificial distinctions between participating litigants should be avoided." (*Id.* at p. 555.) A key question, under *Brunzell*, then becomes an inquiry into whether the cases between the parties were severable. (*Id.* at p. 553.) Grantham does not offer any argument that his case should have been severed, or at what point it should have been severed. The "practical realities" here dictated that proceeding separately against Grantham and his partner, Phelan, and their various entities would have simply created additional litigation.

*C. Discretionary Tolling Days*

The parties appear to agree that FHDI was required to establish 974 days of discretionary tolling under section 583.340, subdivision (c). As we review the dates FHDI argued below on appeal, we are guided by the doctrine of implied findings. We uphold implied factual findings if supported by substantial evidence, and the application of the law to the facts for abuse of

11

discretion. (*Seto, supra,* 86 Cal.App.5th at p. 86.) We address the claimed tolling periods as "categories" of dates below.[4]

### 1. 555 Days Due to Grantham and Phelan's Incarceration

There was a formal stay in place for part of the time that Grantham and Phelan were incarcerated, starting on August 12, 2016. In its prove-up papers, FHDI argued it was entitled to approximately 555 additional days, from the date Grantham reported to prison to August 12, 2016. In his opening brief, Grantham contends that no authority supports the position that bringing the case to trial during that 555 day period would have been impossible, impractical, or futile. He cites a single case, *Brown v. Superior Court* (1976) 62 Cal.App.3d 197, in which the appellate court held that a stay during a plaintiff's period of imprisonment was not subject to tolling.

What Grantham's analysis fails to consider, however, is the requirement that we consider """"all the circumstances in the individual case . . . and the nature of the proceedings themselves."""" (*Seto, supra,* 86 Cal.App.5th at p. 86.) In *Brown*, the incarcerated party was the plaintiff, which puts the case in a very different procedural posture than a matter where the individual defendants are incarcerated.

In his reply, he contends that the case was "actively prosecuted" during this period, pointing to numerous steps FHDI took to advance the case

---

[4] We note that Grantham's reply brief is considerably more detailed and thorough than his opening brief in numerous respects. While there is nothing wrong with this as such, new arguments cannot be raised in a reply brief when they could and should have been raised in the opening brief. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) We therefore disregard any such arguments.

toward trial. But this is different from proceeding with an actual trial in the absence of the individual defendants, and it only supports FHDI's contention that it acted with overall diligence. While there is no inherent right for a civil litigant to be present during proceedings, a court can certainly find that it is unfair or impractical to continue while the individual defendants are incarcerated. The court must have made that finding here, and it was not an abuse of discretion.

2. 625 Days Due to Unilateral Court Continuances

FHDI contends it was entitled to an additional 625 days of tolling between 2020 and 2022 for court-ordered continuances. While Grantham contends the ordinary delays of litigation do not qualify for discretionary tolling, citing *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal. 4th 1081, 1102, he again disregards the particular circumstances of this case. There was much that was not at all "ordinary" between 2020 and 2022. These periods subsumed the COVID-19 epidemic and the months that followed the end of that period. Grantham contends we should consider "common knowledge" in our local courts, and it was certainly common knowledge that during this period, the trial courts were overwhelmed while attempting to return to business as usual, which resulted in many delays at no fault of the litigants. The trial court must have found the facts of this case justified tolling during this period, and we find no abuse of discretion.

While FHDI raises two more periods of tolling, as we have accounted for well over the 974 Grantham contends were necessary, we need not consider them further.

D. *FHDI's Overall Diligence*

"Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile 'in light of all the circumstances in the

13

individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.'" (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 730.)

The procedural history of this case demonstrates it was a challenging matter with multiple defendants. Examining the greater context, the record reflects that trial dates were continued on various occasions through no fault of FHDI's. There were particularly lengthy delays due to Phelan and Grantham's incarceration and the COVID-19 pandemic. Overall, we find no lack of diligence on the part of FHDI.

## II.

### REMAINING MATTERS

*A. Denial of Motion to Set Aside the Default*

Grantham next contends the default judgment against him should have been set aside under section 473, subdivision (b). Under that section, Grantham was required to establish that the default was the result of "mistake, inadvertence, surprise, or excusable neglect." Grantham's argument on this point is confusing.

The first part of his argument in his opening brief contends the court's "avoidance of a ruling [on the five-year rule] violated Grantham's due process rights and was an error of law given its mandatory duty to dismiss cases well beyond the five-year" time frame. Grantham is not clear on how it applies to section 473, subdivision (b).

Next, Grantham argues the court incorrectly focused on his delay in seeking relief from having his answer stricken, which occurred in December 2019 as opposed to the actual entry of default in September 2023.

14

But he fails to explain how he could avoid default if he did not address the fact that his answer was stricken. Instead, he blames FHDI's "inaction," but in doing so, he seems to forget that he was not the only defendant in the case. He contends, without supporting authority, that "[t]here is no reason why a plaintiff should be given longer than three years to enter a default when a defendant has no answer on file." But the Rule of Court he cites, California Rules of Court, rule 3.110(g), does not address the time to seek default in any case where an answer is stricken, much less a multidefendant case. His entire argument reads like a challenge to the court's initial decision to strike his answer rather than an appeal from the denial of a section 473, subdivision (b) motion. Rather than try to parse these unclear arguments,[5] we shall simply review the motion itself and the court's ruling.

In his motion to set aside the default, Grantham claimed that he "was not aware his answer had been stricken" in 2019 because he continued to receive notices electronically from the court and from other defendants, but not from FHDI. He asserted he did not know his answer had been stricken until May 5, 2023. Because the order striking his answer in December 2019 did not "prohibit [him] from filing new pleadings or a new answer without leave of Court" he filed a new answer. He claimed the "mistake, excusable neglect, inadvertence, and/or surprise" he committed in this case was failing to obtain leave of court to file a new answer. He blames FHDI for not providing him notice that his answer was stricken in 2019, despite the fact that he had not updated his address with the court.

_____

[5] Grantham's reply brief is no better. Rather than focusing on the grounds for his motion, the court's ruling, and the precise nature of the error he contends occurred, he focuses almost entirely on FHDI's alleged misdeeds. This is completely unhelpful.

"'Section 473, subdivision (b), authorizes the trial court to relieve a party from a default judgment entered because of the party's or his or her attorney's mistake, inadvertence, surprise, or neglect. The section provides for both mandatory and discretionary relief.'" (*Talbott v. Ghadimi* (2025) 109 Cal.App.5th 967, 976–977.) If a party seeks relief under the mandatory relief provision of section 473, subdivision (b), the motion must clearly say so. (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1121, 1124–1126.) Grantham's motion does not state it seeks relief under the statute's mandatory provision. That leaves us with section 473, subdivision (b)'s discretionary relief provision, which, unsurprisingly, we review for abuse of discretion. (*County of San Bernardino v. Mancini* (2022) 83 Cal.App.5th 1095, 1103.)

The trial court found the only relief possible was based on Grantham's personal "mistake, inadvertence, surprise, or excusable neglect relating to the initial striking of his answer. . . . [¶] . . . Grantham acknowledges he failed to update the court or the parties regarding his current address after he served his fraud conviction sentence in federal prison. Nonetheless, he declares he did not receive notice of either the case management conference or order to show cause hearing that led to the striking of his answer. He also declares he received no notice his answer was strik[en] in December 2019. He claims he did not learn his answer was stricken until May 5, 2023, when he contacted FHDI's counsel to request copies of the trial documents. [¶] The court does not find Grantham's explanation credible, and any purported lack of actual notice was caused by Grantham's admitted failure to notify everyone of his current address as he was required to do, and as he admits he did when he went into prison. Moreover, Grantham's explanation does not provide any explanation regarding what occurred in the three and one-half years between the court

16

striking his answer in December 2019, and Grantham calling FHDI's counsel in May 2023. Indeed, Grantham fails to show he acted with any sort of diligence let alone reasonable diligence. He admits he was receiving at least some of the notices and documents relating to this case, but did nothing to attempt to participate in this case or inquire of the status after he failed to update his address. In evaluating Grantham's credibility, the court notes he was a licensed attorney for many years including during at least the first few years of this case. Based on the totality of the circumstances, the court finds Grantham failed to establish any mistake, inadvertence, surprise, or excusable neglect that would justify granting relief. The court also finds Grantham failed to act with any sort of diligence or reasonableness for a party who now seeks to participate in this action."

Section 473, subdivision (b) is designed to protect against default when there is ""'some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.'"" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611.) Grantham, an attorney who knew there was ongoing litigation, was negligent in failing to update his address upon his release from prison. No matter how mightily he attempts to shift the blame for any purported lack of notice to FHDI, the trial court found this contention without merit. That is a decision well within the court's discretion.

17

*B. Taking Motion to Dismiss off Calendar*

Grantham claims the trial court deprived him of "due process" and he "suffered a judgment in excess of $5 million" by having the motion taken off calendar. This contention assumes without demonstrating that the motion to dismiss would or should have been granted. As we discussed above, the court did not err by refusing to grant his motion to dismiss. Accordingly, even if this was error, it was harmless error.

*C. Amount of Credit Due to Grantham on Malibu Property*

As relevant here, in October 2014, FHDI served a notice of public auction sale of an entity called Malibu Vista LLC, which was one of the pledged LLCs. "FHDI submitted a credit bid of $900,000 for the assets and acquired them at the sale." Malibu Vista owned 88 acres of land in Malibu. In its calculation of damages, FHDI credited Grantham with the $900,000 it paid. Grantham contends the $900,000 bid was not sufficient, and he was entitled to the fair market value of the property as an offset against the judgment.

We agree. Generally, damages in fraud claims are measured by out-of-pocket losses. [6] "The out-of-pocket measure restores a plaintiff to the financial position he enjoyed prior to the fraudulent transaction, awarding the difference in actual value between what the plaintiff gave and what he received." (*Fragale v. Faulkner* (2003) 110 Cal.App.4th 229, 236.) Comparing this case to a deficiency judgment, FHDI contends the amount it paid at auction is the proper amount of the offset, relying on *Dreyfuss v. Union Bank*

---

[6] In cases involving a fiduciary duty, courts often apply the more expansive "benefit of the bargain" damages. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240.) FHDI does not argue this measure of damages applies here.

*of California* (2000) 24 Cal.4th 400, 407 (*Dreyfuss*). That case involved multiple items of collateral in nonjudicial foreclosure proceedings. The court found the amount paid at auction for the first collateral property determined the amount the creditor deducts to determine the outstanding balance before moving onto the next item of collateral. (*Ibid.*) For example, suppose a debtor owed $1,000 and had two pieces of collateral property, A and B. Property A sold at auction for $250. The $250 is the proper credit given to the debtor, who now owes $750, before moving onto the sale of Property B. This allows the creditor to move swiftly to collect its debt against each piece of collateral property without seeking a judicial determination as to its value.

We agree a deficiency judgment is the proper analogy, because FHDI obtained a personal judgment against Grantham after a foreclosure. But what *Dreyfuss* does not address is the situation we have here, where the creditor seeks a *personal* judgment against the debtor for the deficiency. In such cases, the normal rules apply. Those rules are set forth elsewhere in relevant statutes. Section 580a, for example, requires an assessment of the property's "fair market value thereof at the date of sale."

FHDI, as far as we can tell, did not provide any evidence of the fair market value of the Malibu property, and therefore, allowing $900,000 foreclosure sale price to be used as the amount of the "credit" toward the judgment was error. According to FHDI, the value of the vacant mountainous property was limited by its terrain and ingress and egress problems. Grantham contends that comparable properties were worth millions. This is a factual finding which we cannot make on appeal. The matter is remanded to the trial court for the sole purpose of assessing the fair market value of the Malibu property and amending the judgment accordingly.

## DISPOSITION

The matter is remanded to the trial court for further proceedings regarding the fair market value of the Malibu property. In all other respects, the judgment is affirmed. Each party is to bear its own costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.